HENRY L. HOBART & others *vs.* GEORGE LUBARSKY & others.

Suffolk.    January 14, 1913. — October 20, 1913.

Présent: RUGG, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Contract,* In writing.    *Agency,* Broker.

A merchandise broker, who has negotiated a sale between a seller and buyer of goods, is authorized by virtue of his employment to write out and sign bought and sold notes as memoranda of the agreement to make it binding under R. L. c. 74, § 5, but he has no authority as broker to make a contract in writing for the parties; and an action for the non-delivery of goods cannot be maintained against the alleged seller of the goods upon a sold note signed in his behalf by a broker, which is declared upon as a contract in writing. If the buyer has a remedy, it is by an action on the oral agreement, of which the sold note must be alleged to be a memorandum, and the plaintiff in order to recover must show that the defendant authorized the broker to make in his behalf the oral contract of sale which the plaintiff alleges was broken.

LORING, J. There was a mistrial in this cause. The case was in substance as follows: Naisawald and Son of New York were molasses brokers and the defendants Kaplan and Lubarsky dealt in molasses under the firm name of the Sugar Products Company. There was evidence that in April, 1909, Kaplan on behalf of the Sugar Products Company employed Naisawald to find a purchaser for some six thousand barrels of Porto Rico molasses, "known by the sample of 'Blue M grade,'" of which he gave Naisawald a sample.. Pursuant to this Naisawald brought the molasses to the plaintiffs' attention and they finally offered to buy it for ten and seven-eighths cents a gallon provided the Sugar Products Company would procure a responsible person to guarantee fulfilment of the contract. Upon this being reported by Naisawald to the defendant Kaplan the two went to the office of one Bernstein, where the terms of the proposed sale to the plaintiffs were discussed by Naisawald, Kaplan and Bernstein. After the terms had been settled Naisawald wrote out in pencil a rough memorandum of them and read it to Kaplan and Bernstein, and on their agreeing to the terms there stated he went to the telephone and read the memorandum to Christianson (one of the plaintiffs), who (he testified)

assented to it.   There also was evidence that the plaintiffs accepted Bernstein as a satisfactory guarantor.   It appeared from the testimony both of Naisawald and of Christianson (witnesses for the plaintiffs) that Naisawald came to the office of the plaintiffs after the interview with Bernstein which has just been stated, and that Christianson then called Naisawald's attention to the fact that by the terms of the bid which he originally made the cargoes were to be "sail cargoes."   In consequence of that Christianson inserted in the rough memorandum in purple pencil the words ["sail cargo."] He also inserted in it the word ["buyers."]   A copy of the rough memorandum is to be found in a footnote.*   Later in the day he

---

* [The words interlined in purple pencil are the words in brackets.]

"B. Bernstein & Son,                                    Barnet Bernstein
Manufacturers of              to this contract          Edward Bernstein
    Fine Clothing,
    626 Broadway,
Telephone, 4267 Spring                                  New York, Ap 28 1909
    Sold for a/c Sugar Products Co.
        To H. L. Hobart & Co.
about 6000 Brls Porto Rico molasses, as per sample marked & known as Blue M
                            5 days
@ 10.⅞c per gall net cash — after goods have been landed accepted gauged & coopered — Buyers option of 4 ports N. Y. Phila Balt or Boston [sail cargo] [buyers] giving sellers ample time as to destination.
    To be in and cooperage Molasses or syrup or Glucose Iron bound large barrels — gauging 50 to 60 gal
shipment 2500 Brl in June
shipment 3500    "    August September
but this latter quantity subject to confirmation by cable from P. R. not later than about Monday May 3rd  buyers agreeing to advance 35% against Bill Lading & Insurance certificate as cargoes are completed B. Bernstein & Son endorsing the same — also being a party or endorsers."

    [Sales note.]              "Louis C. Naisawald & Son.
                        Rice, Sugar, Molasses & Syrups.
                              102 Wall Street,
Telephone, John 631.          New York, April 26th, 1909.
            Sold for a/c Sugar Products Co., New York City, N. Y.
                To H. L. Hobart & Co., New York City, N. Y.
    About 6,000 barrels of Porto Rico Molasses, as per sample marked and known as BLUE M.,
    at 10-⅞¢ per gallon, Net Cash, Five (5) days after goods have been landed,

wrote out in duplicate a more formal sales note which followed the substance of the rough memorandum thus altered (a copy of which is also to be found in the footnote). The next morning Naisawald presented the duplicate sales notes to Bernstein and he signed them as guarantor. On their being presented to the plaintiffs they wrote across the face: "Approved, Henry L. Hobart & Co." Later, on the same day, Naisawald presented the two duplicate original sales notes to Kaplan, who refused to sign them on the ground that he never agreed to sell by the sample Blue M. Subsequently the defendants proposed that a barrel should be shipped and submitted to the plaintiffs as a sample. The plaintiffs refused to consent to this. No molasses was delivered, and this action was brought for damages for non-delivery, the plaintiffs declaring on the sales note as a written contract.

It is stated in the bill of exceptions that the word "Boston" was written into the rough memorandum when the words "sail cargo" and "buyers" were written in. But it is stated that all these words were written in "purple pencil" and from an inspection of the original memorandum which was submitted to us by consent, the only words written are "sail cargo" and "buyers."

The defendants and their witnesses testified that no trade was completed at the meeting between Naisawald, Kaplan and Bernstein, that the memorandum made by Naisawald was not read by him to Kaplan and Bernstein, nor by Naisawald over the telephone to the plaintiffs. That they never agreed to sell by the

---

accepted, gauged and coopered. Buyer's option of four Ports, New York, Philadelphia, Baltimore or Boston, giving sellers ample time as to destination. To be shipped by sail cargo.

To be in good cooperage, Molasses or Syrup or Glucose Iron Bound large barrels, gauging 50 to 60 gallons.

Shipments — 2500 barrels in June
3500 barrels August–September,
but this later quantity subject to confirmation by cable from Porto Rico not later than about Monday May 3rd.

Buyers agreeing to advance 35% against Bill of Lading and Insurance Certificates as cargoes are completed, — B. Bernstein endorsing the same: — also being a party as endorser to this contract.

Signed,
L. C. Naisawald & Son.
Guaranteed by B. Bernstein."

Blue M sample but offered to sell by a sample taken from the cargo later on.

The presiding judge* left it to the jury to determine (1) whether a trade was struck when Kaplan and Naisawald were at Bernstein's office and Naisawald testified that he talked to Christianson over the telephone, or (2) whether the signing of the sales note (which the judge as well as the parties treated as a contract) was within the real or apparent scope of Naisawald's authority.

The plaintiffs had a verdict, and the case is here on exceptions taken by the defendants to the refusal of the judge to give certain instructions asked for by them. No exceptions were taken to the judge's charge.

It is plain that the evidence did not warrant the jury in finding that the defendants had entered into a written contract. The only authority given by the defendants to Naisawald was to act as a broker. Until the terms are agreed upon between the principals a broker is a messenger to carry the offers made one to the other. When a trade has been made by the acceptance of an offer, the broker is authorized by force of his employment as broker to write out and sign the bought and sold notes (duplicate sales notes, as they are sometimes called) necessary to make the trade a binding contract under the statute of frauds, which in this Commonwealth is found in R. L. c. 74, § 5. Where one is employed as a broker he does not thereby get any other or further authority than that just stated, and there is no question in such a case of apparent scope of authority as distinguished from the broker's real authority. See for example *Coddington* v. *Goddard,* 16 Gray, 436, 445; Williston on Sales, § 116. The paper declared on in the case at bar as a contract was really a sale note. Apart from the purple pencil alterations made in the rough memorandum which were incorporated in it, Naisawald's employment as a broker gave him authority to make and sign it, if the plaintiffs' evidence was believed. But Naisawald had no authority from the defendants to make a written contract in their behalf. A written memorandum of an oral agreement is a different thing from a written contract. Where the trade is made by word of mouth a memorandum is a good memorandum of it in case it states the terms previously agreed upon by word of mouth. But in case of a written contract the trade

---

* *Wait,* J.

finally struck is the trade stated in the writing, and, because the trade finally struck is the trade stated in the writing, what was previously said by word of mouth is of no consequence. See as to written contracts *Whidden & Co.* v. *Jordan, ante,* 189, 192, 193, where the cases are collected.

In the case at bar there was evidence that Naisawald had authority to make a memorandum of the trade which was made by word of mouth by the defendants and the plaintiffs, if a trade was so made. But there was no evidence that the defendants authorized Naisawald to enter into a written contract in their behalf.

If the first instruction\* asked for had been based on the pleadings as well as on the evidence, it could not have been refused. The tenth and eleventh should have been given.

*Exceptions sustained.*

*A. H. Russell,* for the defendants.
*Lee M. Friedman,* for the plaintiffs.

---

\* The instructions requested, above referred to, were as follows:

"1. Upon the whole evidence in the case, the plaintiffs cannot recover and the verdict must be for the defendants."

"10. In order to justify a verdict for the plaintiffs in this action, the jury must find that the defendants gave to Naisawald and Son direct authority to make the alleged contract upon which the plaintiffs rely in the form in which it is submitted to the jury.

"11. If the jury believe from the evidence that Naisawald and Son made any other or different contract from that which they were authorized to do by the defendants, the plaintiffs cannot recover."