Politziner *v.* Vanech.

———————— ‹•·•› ————————

Isaac Politziner et al. *vs.* Peter Vanech.

* First Judicial District, Hartford, May Term, 1924.
Wheeler, C. J., Beach, Curtis, Keeler, and Ells, Js.

A broker who is merely employed to sell certain merchandise is not a general agent; he is a negotiator or middleman, and in the absence of a contrary custom or usage in his particular trade, his authority is strictly limited to finding a purchaser on the seller's terms and does not include the power to contract or to bind his principal by express warranty; nor will information imparted to him by the seller, concerning the purpose for which the goods are required, operate to raise an implied warranty of their fitness for such purpose under § 4681 of the General Statutes, since the knowledge acquired by him in the transaction is not imputed to his principal.

Ignorance on the part of the purchaser that he is dealing with such a broker does not enlarge the broker's authority or the principal's responsibility.

Parties may agree in advance to pay a stipulated sum for a breach of their contract, and such a provision will be regarded and enforced as one for liquidated damages, provided, first, it appears that the parties so intended; second, that the situation was one in which the anticipated resultant damages would be uncertain in amount or difficult to prove; and third, that the sum agreed upon was reasonable, that is, not greatly disproportioned to the presumable loss or injury.

In the present case, the contract, which was for the purchase of one

* Transferred from third judicial district.

hundred tons of sugar by the defendant, provided that, before the contract was fully performed, he should pay to the plaintiffs $10,000 to be retained by them in full settlement of claims and damages if the defendant failed to perform. The defendant paid the plaintiffs $7,500, and in this action, which was based on his refusal to take and pay for the sugar, claimed that the plaintiffs could not recover more than $2,500, although it appeared that their actual loss was $28,000. *Held* that the defendant was in no position to claim the benefit of the provision as one for liquidated damages because he had not performed his obligation thereunder to pay the plaintiffs the full sum of $10,000, and that, even if he had, the agreement was unreasonable and, therefore, unenforceable as a provision for liquidated damages.

The date for complete performance of the contract was extended twice by written amendment and then orally from time to time at the defendant's request. *Held* that the trial court properly computed the plaintiffs' damages as of the date fixed in the last oral extension.

Argued May 8th—decided July 28th, 1924.

ACTION to recover damages for the alleged wrongful refusal of the defendant to accept and pay for sugar sold to him by the plaintiffs, pursuant to a contract between them, brought to and tried by the Superior Court in Fairfield County, *Maltbie, J.;* facts found and judgment rendered for the plaintiffs for $28,404, from which each party appealed. *No error.*

The finding discloses that the plaintiffs and the defendant on June 12th, 1920, entered into a written agreement, the material parts of which are as follows:

"New York, June 12, 1920.

CONTRACT

BUYER: Peter Vanech, Stamford, Conn.

SELLER: Politziner Brothers, 332 E. 103rd St., N. Y. City.

One Hundred Tons (2240 lbs. to the ton) of White Java Sugar, crop 1920, at Twenty three and three quarters cents (23-¾¢.) per pound, net cash: duty paid: cost, freight and insurance from Java, including war

risk, to New York, Net landed weights New York. Sugar test 99 and guaranteed equal No. 25 Dutch Standard; packed in single bags of about two cwt. net each. Sugar now en route. Steamer due to arrive about the last week in June or about the first week in July. TERMS: Irrevocable letter of credit for full amount, five per cent, more or less, to be opened by BUYER in favor of Politziner Brothers in an approved New York bank; payable at such bank 95 per cent upon presentation of delivery order, and the balance upon presentation of invoice and certified weights returns. Letter of credit to be opened for $55,860.00 and to remain in force until July 31st. This contract is subject to strikes, fire, accidents, or other delays beyond Seller's control. Also subject to terms and conditions contained in importer's contract. Any dispute arising out of this contract to be settled by arbitration."

On July 21st, 1920, the parties entered into an agreement modifying the foregoing agreement, the portions of which essential to this action are as follows: " FIRST: The purchase price of said sugar, is hereby reduced from twenty three and three quarters cents (23-$\frac{3}{4}$¢.) per pound to twenty-one and three quarters cents (21-$\frac{3}{4}$¢.) per pound, Net Cash, ex-dock, New York. SECOND: Said Vanech agrees to take and pay for the said sugar, at the said price of 21-$\frac{3}{4}$ cents per pound, ex-dock, New York, in the following manner and upon the following terms. THIRD: said Vanech shall, upon the signing of this agreement pay to Politziner Brothers, the sum of TWO THOUSAND DOLLARS, in cash and on or before July 26th, A. D. 1920, an additional sum of EIGHT THOUSAND DOLLARS, in cash, and the payments shall constitute a sum of TEN THOUSAND DOLLARS, to be held by the said Politziner Brothers, as earnest money, to apply on the purchase of the said sugar, in accordance with

the terms herein set forth.  FOURTH: Said Politziner Brothers shall . . . warehouse, the said . . . sugar, for their own account.  FIFTH: Said Vanech agrees to take and pay for all of the said one hundred tons of sugar, within thirty days from the date, at which the said sugar, is available for delivery from warehouse. . . . NINTH: Should the said Vanech fail to take and pay for the said one hundred tons of sugar, as herein provided, then the said earnest money, or sum of ten thousand dollars, shall be forfeited by him, to the said Politziner Brothers, in full settlement of all claims and damages and the said Politziner Brothers shall be entitled to retain the said sum, as liquidated damages.  TENTH: Should the said Politziner Brothers fail to deliver the said sugar promptly, at the time and in the manner herein specified, to the said Vanech, then the said sum of TEN THOUSAND DOLLARS, shall thereupon be, at once returned by them, to the said Vanech, with interest thereon, at the rate of six per cent per annum, from July 26, A. D. 1920, to date of payment."

On August 9th, 1920, the parties entered into the following agreement further modifying their written agreements:  "Said Vanech shall upon the signing of this agreement pay to Politziner Brothers the sum of Two Thousand Dollars in cash; on or before July 26th, A. D. 1920, an additional sum of Three Thousand Dollars in cash; on or before August 9th, 1920, an additional sum of Two Thousand Five Hundred Dollars in cash, and on or before August 30th, 1920, an additional sum of Two Thousand Five Hundred Dollars in cash, and these payments shall constitute a sum of TEN THOUSAND DOLLARS, to be held by the said Politziner Brothers, as earnest money, to apply on the purchase of the said sugar, in accordance with the terms herein set forth.  Second: Clause five (5) shall be changed to read as follows:  Said Vanech agrees to take and pay for

Politziner *v.* Vanech.

all of the said one hundred tons of sugar on or before September 15th, A. D. 1920."

In the negotiations leading up to the contract of June 12th, 1920, the defendant was represented by G. M. Gest and he negotiated with one Hirtzel, a sugar broker. The plaintiffs personally signed the contract.

The steamer carrying the sugar contracted for from Java arrived in New York City on July 22d, 1920, and the one hundred tons were ready for delivery a day or two later. A delivery of thirty bags was made at the order of the defendant on July 29th, and on August 2d a delivery of forty-four bags was made at the order of the defendant. No further delivery was made by the plaintiffs to the defendant and the defendant never saw the sugar other than the seventy-four bags delivered.

A controversy arose between the parties, the defendant claiming that he could not use the sugar and the plaintiffs demanding fulfilment of the contract. The sugar market after about July 1st, 1920, was in a chaotic condition. The market price was declining daily. The opinions of experienced dealers were at variance as to whether the price would continue to decline or rise to new higher levels.

From time to time between the first week in September and the last week in November, 1920, the plaintiffs frequently requested the defendant to take delivery of the sugar and to pay for the same, but the defendant in each instance requested a further extension of time in which to do so, until he had heard from the negotiations which were being carried on for the sale of the sugar to the Greek government, and to this the plaintiffs consented.

At no time after the signing of the modification of August 9th, 1920, did the defendant or his agent ever repudiate the agreement between the parties. About the last week in November, 1920, the defendant first

informed the plaintiffs that he would not accept delivery of the sugar.

On December 2d, 1920, the plaintiffs wrote to the defendant and notified him that in view of his default they intended to sell the sugar then on hand at the market price and hold the defendant for the difference between the amount realized and the contract price, unless the defendant took and paid for it by December 4th. The defendant made no reply to this letter, and about a week later the plaintiffs sold the nine hundred and thirty bags, which was the balance remaining in their possession, to Howell & Company, a refinery, for $6.32½ per one hundred pounds, which was the market price of this kind of sugar at the time and which was the best price obtainable therefor; and the plaintiffs received $12,653.01.

The sugar which the plaintiffs were ready to deliver to the defendant and of which seventy-four bags were delivered on his orders, was a very fine white Java sugar; it was a part of the 1920 crop; in color it equalled or was superior to "No. 25 Dutch Standard"; it exceeded the requirement "sugar test 99"; and it was not wet, having no moisture except that natural to white Java sugar, perhaps a little intensified by its long voyage. The real objection to the character and quality of the sugar on the part of the defendant and those who received it was due to the inherent nature of white Java sugar, rather than to its failure to measure up to white Java sugar of the kind and quality described in the original agreement of sale.

White Java sugar is a sugar which is grown in Java, and is very largely used in Europe and the East for table purposes and in human consumption generally. It is a washed sugar, not refined as is American granulated. In color it is slightly tan. It is naturally moist, to such an extent that it will not run freely. Except

as affected by these peculiarities, it is capable of serving most of the uses to which American granulated sugar is. put. During the scarcity of sugars in 1919 and 1920, it was used largely in this country for almost all purposes, was sold to the retail trade, and was to some extent used in hotels and restaurants, and in confectionery establishments.

The color and moisture of this sugar, however, make its appearance unattractive as compared with American granulated sugar. For use in restaurants and public eating places, this constitutes a considerable defect. If used in making ice creams, confectionery and like products, it imparts a darker tinge to the product than American granulated sugar, which has an unfavorable effect upon the salability of the product. In the making of candies, it will not stand heat without burning as well as American refined; it can be used without difficulty in large confectionery establishments where the vacuum process is in operation, but not for many purposes in smaller establishments, such as that of the defendant and his friends.

Viewed in the light of conditions with reference to sugar existing on and before June 12th, 1920, white Java sugar was reasonably fit for use by the defendant and his friends for restaurant and hotel purposes, but the return of American granulated sugar upon the market by the end of July, 1920, resulted in its being no longer marketable for these uses. This was due in part to its moisture, resulting in its not running freely, but chiefly to its color. For making of confectionery, ice cream and the like, it was at all times usable for many purposes, but was never fit for certain uses, as for making pure white candy in any circumstances, nor for certain others under the methods employed by the defendant and his friends and associates interested in this sugar.

At the close of the evidence, the defendant made the following claims which the court overruled. These claims indicate in substance the numerous reasons of appeal:

1. Upon the facts as disclosed by the evidence, an implied warranty arose that the sugar which was the subject of the sale was reasonably fit for the particular purposes for which it was purchased by the defendant as made known by him to the plaintiffs prior to the sale; and that there was a breach by the plaintiffs of such implied warranty.

2. The provisions of the modified contract of July 21st, 1920 (sections "third" and "ninth"), as ratified and confirmed by the modification of August 9th, 1920, fixed and liquidated the damages which would accrue to the plaintiffs for a breach of this contract by the defendant at the sum of $10,000; of which amount the defendant had paid the plaintiffs $7,500 and recovery could be had only for the balance of $2,500.

3. If the foregoing claims as set forth in paragraphs 1 and 2 hereof, were not sustained, then damages must be assessed as of August 30th, 1920, the date when the defendant failed to make the final payment of $2,500 on account of the earnest money as required by the modification of August 9th, 1920, or at the latest, as of September 15th, 1920, the date on or before which the defendant was to take and pay for all of the sugar.

4. Upon the facts as disclosed by the evidence and upon the pleadings, the defendant was entitled to a judgment for $200, and interest thereon, upon the second count of his counterclaim.

The court rendered judgment for the plaintiffs to recover the contract price for the sugar less payments made by the defendant and less the amounts received on its sale.

*Warren F. Cressy* and *John F. Keating,* for the appellant (defendant).

*Raymond E. Hackett,* with whom, on the brief, was *Homer S. Cummings,* for the appellants (plaintiffs).

CURTIS, J. The finding discloses a written contract entered into between the plaintiffs, as sellers, and the defendant, as buyer, for the sale and purchase of one hundred tons of white Java sugar. The defendant claims that there was an implied warranty attached to the original contract of sale to the effect that the white Java sugar contracted for was reasonably fit for the particular purposes for which the goods were required, which purposes were made known to the seller by the buyer who relied on the seller's skill and judgment. The Sales Act, General Statutes, § 4681.

The finding recites that one Gest, duly authorized by the defendant, negotiated with one Hirtzel, a sugar broker employed to sell the sugar for the plaintiffs with such authority as a broker has in law, and that they arranged the terms of the contract of June 12th, 1920, which was then submitted to the plaintiffs and signed by them. The court specifically finds as follows: "The plaintiffs gave no authority to Hirtzel to make any representations relative to the quality and kind of sugar, and signed the contract in ignorance that any warranties or representations, other than those contained in the contract, had been made."

The defendant claimed that this finding should not be permitted to stand as Hirtzel testified without contradiction that he was a broker and had been employed to sell this sugar by the plaintiffs, and that such employment in law authorized him to make warranties.

The court ruled that the mere employment of a sugar broker to sell sugar did not authorize him to make ex-

press warranties as to the sugar, nor could an implied warranty arise out of information received by him as to the particular purposes for which the sugar was required. The chief reason for the holding of the trial court, that the plaintiffs made no express or implied warranties, other than those appearing in the written contract, was because Hirtzel had no authority to make such warranties. The defendant claims that Hirtzel as a broker was told the particular purposes the defendant required the sugar for, and that his knowledge so acquired was the knowledge of the plaintiffs, upon the ground that knowledge of an agent is knowledge of his principal, and that the situation is the same as if Gest had told the plaintiffs what he told Hirtzel about the requirements of the buyer. This claim of the defendant cannot be sustained.

There is no finding of any usage or custom attaching any authority whatever to a sugar broker employed to sell sugar. Gest told Hirtzel, the broker in the negotiations, that he wanted sugar for a friend who was engaged in the hotel, restaurant, and confectionery businesses, and who wanted the sugar for those particular purposes. Hirtzel then told Gest that white Java sugar had the same qualities as American granulated sugar and that there was no difference generally between them, but that white Java sugar was not as white as American granulated, was darker in color; and also then gave Gest to understand that the white Java sugar which he had for sale would be suitable to be used by the defendant in his businesses as Gest had described them; and he gave Gest a small glass bottle containing a sample of that sugar. Gest immediately reported to the defendant this offer of sale made by Hirtzel and his conversation with Hirtzel relating to the qualities of this white Java sugar, and showed the defendant the little bottle containing the sample.

The court held that a warranty, had such been made by the plaintiffs, that the sugar would be reasonably fit for the purposes of the businesses of the defendant, was broken.

A merchandise broker merely employed to sell certain merchandise is not a general agent of his principal as to such sale, whose statements in the transaction and whose information acquired in the transaction, become the statements and information of the seller. An employment of a broker to sell merchandise by an owner does not import any other authority on the part of the broker than to bring buyer and seller together in order that they may enter into a contract of sale. The broker cannot enter into a contract in behalf of the seller or otherwise bind him. He earns his commission by finding a purchaser at the terms of the vendor. A mere broker in a sale transaction, whether of merchandise or real estate, is one who is employed to bring buyer and seller together in order that they may enter into a contract of sale. Unless specially authorized he has no authority to enter into a contract and bind his employer.

In Story on Agency (9th Ed.) § 28, the author says, in substance, that properly speaking, a broker is a mere negotiator between buyer and seller; he is strictly a middleman, or intermediate negotiator; and for some purposes, as for the purposes of signing (so as to bring a contract within the statute of frauds), he is treated as the agent of both parties. *Hobart* v. *Lubarsky*, 215 Mass. 528, 102 N. E. 963; *McCullough* v. *Hitchcock*, 71 Conn. 401, 42 Atl. 81. Such a broker has no authority to bind the seller by warranties made directly by him or made by implication from knowledge acquired by him. Clark & Skyles on Agency, Vol. 2, § 751; Mechem on Agency (2d Ed.) Vol. 1, § 73, Vol. 2, § 2403; 9 Corpus Juris, 512, § 13; Williston on Sales, Vol. 1, § 116 (at end).

A person dealing with such a broker is bound to know the limitations, by law, on his authority. If a person dealing with a broker does not know he is a broker, his ignorance does not enlarge the broker's authority or the principal's responsibility. Story on Agency (9th Ed.) § 225. If he knows that he is dealing with a mere broker, then in the eyes of the law, he knows that the broker cannot bind the seller by warranties made directly by him or made by implication from knowledge acquired by him in the transaction. If the buyer desires warranties directly made or made by such implication, he should have the direct warranties inserted in the contract and inform the seller directly of such facts as will create an implied warranty.

Under the finding Hirtzel had no authority to make an express warranty as to the sugar, nor would information imparted to him create an implied warranty. To the extent indicated the rule of *caveat emptor* is still effective.

As to this feature of the case relating to warranties, the plaintiffs further claim that, under the Sales Act, General Statutes, § 4681(4), there would be no implied warranty of fitness for a particular purpose because the contract related to a specified article, "white Java sugar," which was dealt in under that trade name. The plaintiffs further claim that the purposes for which Gest stated to Hirtzel that the defendant required the sugar, to wit, for use in his hotel, restaurant, and confectionery businesses, is not such a statement of a "particular purpose" as is intended by the use of that term in General Statutes, § 4681. As we have decided herein that Hirtzel's employment by the plaintiffs as a broker to sell sugar, without any further authorization, did not authorize him to create any express warranties, and that implied warranties binding upon the plaintiffs could not arise out of information coming to him as such

broker, it is unnecessary to consider the above claims of the plaintiffs.

The defendant further claims that the provisions of the modified contract of July 21st, 1920, as modified by the agreement of August 9th, 1920, fixed and liquidated the amount of damages which would accrue to the plaintiffs for a breach of the contract by the defendant at the sum of $10,000, of which $7,500 had been paid, and that recovery could be had only of the unpaid balance of $2,500. The provisions of the modified contracts under which this claim is made are found in the third and ninth paragraphs of the modification of July 21st, 1920, and in the modification of August 9th, 1920, set forth in the statement of facts.

The plaintiffs claimed (1) that this agreement as modified is not binding upon them, because the defendant failed to perform, in that he did not pay the plaintiffs the $10,000 agreed upon; and (2) that if treated as equivalent to an agreement fixing liquidated damages, it is ineffective in that it is not a valid agreement for that purpose.

Under these agreements the defendant paid the plaintiffs $7,500, but failed to pay the $10,000 as agreed, and he received credit for the $7,500 in the judgment rendered. An agreement by a seller to accept $10,000 in satisfaction for a breach of a contract to buy, if that amount is paid to the seller and held by him at the time of the breach, is materially a different contract from an agreement that $10,000 shall be the liquidated damages upon a breach of a contract. In the former case the seller, in case of a breach, has the $10,000 in his hands, and no suit for damages for a breach of contract, with its uncertainties, is necessary. That a seller should agree to accept $10,000 to be held by him as compensation in case of a breach of contract, is a materially different agree-

ment from an agreement as to liquidated damages in case he has to bring suit with all the uncertainties of the collection of any judgment. One contract is not the equivalent of the other, and a willingness to enter into the former contract does not establish a willingness to enter the latter.

A buyer who has entered into such a contract as was made here, to pay $10,000 to the seller as compensation in case of breach, must establish the elementary essential of performance, or its equivalent, on his part in order to secure its benefits. This the buyer has failed to do, and therefore these provisions are not available as establishing the extent of the plaintiffs' damages recoverable in this action.

The trial court also ruled "that these provisions were not enforceable because they provided for one sum payable upon a breach, in a situation where compensatory damages would be greatly variant, and so were not enforceable as liquidated damages." It does not appear in the finding, except by inference, what the market value of white Java sugar was on August 9th, 1920, when the last modification of the contract as to this feature of the case was made. Even if we treat these provisions as provisions for liquidated damages, then, to determine whether or not the agreement is invalid because unreasonable, "the court is to put itself in the place of the parties at the execution of the agreement [on August 9th] and, looking forward, attempt to discover what loss they might reasonably have anticipated in view of the conditions [then] presented." *Schoolnick* v. *Gold*, 89 Conn. 110, 114, 115, 93 Atl. 124. The trial court, on the facts found, held in substance that on August 9th, 1920, these provisions of the contract were not in harmony with the fundamental rule that compensation shall be commensurate with the extent of the injury.

We said in *Banta* v. *Stamford Motor Co.*, 89 Conn. 51, 54, 92 Atl. 665, that "'when the nature of the engagement is such that upon a breach of it the amount of damages would be uncertain or difficult of proof, and the parties have beforehand expressly agreed upon the amount of damages and that amount is not greatly disproportionate to the presumable loss, their expressed intent will be carried out.'" That case sets forth the conditions which must co-exist to render such an agreement enforceable, as follows: (1) The damages to be anticipated as resulting from the breach must be uncertain in amount or difficult to prove; (2) there must have been an intent on the part of the parties to liquidate them in advance; (3) the amount stipulated must be a reasonable one, that is to say, not greatly disproportioned to the presumable loss or injury. Under the facts found, we cannot say that the court either illegally or illogically held that the three essential conditions to an enforceable agreement for liquidated damages did not exist on August 9th, 1920.

The defendant further claimed that September 15th, 1920, the date fixed in the amended contract of August 9th, 1920, for the defendant to accept and pay for the sugar, was the date at which damages should have been computed. In the amended contract of July 21st, 1920, the defendant specifically agrees to take and pay for the sugar within thirty days from date, and in the further amended agreement of August 9th, agrees to take and pay for the sugar on or before September 15th. The finding discloses that the plaintiffs, at the defendant's request, continued to extend the time for the defendant to take and pay for the sugar until late in November, 1920. This claim of the defendant is therefore without merit.

The finding discloses that the claim of the defendant

under the second count of the counterclaim to recover $200 is entirely without merit.

The changes in the finding sought by the defendant have already been dealt with or are immaterial in view of our rulings.

The defendant's reasons of appeal are not sustainable. There is no error.

In this opinion the other judges concurred.