## EUCLID CANDY CO. v. WHITNEY–CENTRAL TRUST & SAVINGS BANK.

### No. 5360.

Circuit Court of Appeals, Sixth Circuit.

April 8, 1931.

A. O. Dickey, of Cleveland, Ohio (Calfee & Fogg, of Cleveland, Ohio, on the brief), for appellant.

Clan Crawford, of Cleveland, Ohio (Squire, Sanders & Dempsey, of Cleveland, Ohio, on the brief), for appellee.

Before DENISON, MOORMAN, and HICKENLOOPER, Circuit Judges.

DENISON, Circuit Judge.

This case grows out of a supposed contract for the sale of sugar during the runaway market of 1920, in which contract the Euclid Candy Company (defendant below and appellant here) was the vendee, and Seago (assignor to the Whitney Bank, plaintiff below) was vendor. During this market, the high prices brought into this country foreign sugars not very well known here. Among these was what was called "brown Panela lump," a relatively rough and unrefined product of some of the Central American countries. The lumps were in the form of cones, four or five inches high and about the same base diameter. Seago acquired a quantity of this sugar, which he proposed to resell. Accordingly, he sent a circular letter to merchandise brokers handling sugar in several cities. One of these letters came to Rankin, a merchandise broker in Cleveland, who was then employing Barrett as his agent and solicitor. This Seago circular letter, after reciting the world shortage of sugar and the high prices and the exhaustion of the supply, even in Central America, from which the writer had just returned, proceeded: "I was fortunate enough to buy 10,000 bags of brown lump sugar called Panela, packed in bags of about 200 lbs., and as you doubtless know this sugar runs irregular, some very light lumps and some very dark. However, it is sugar, and can be shipped immediately. Today's price is 18 cts. f. o. b. here. Terms: —as we are compelled to pay cash in Central America we must insist on cash with order or banker's letter of credit. Better wire your orders, as the lot will go in a hurry and before we can send samples."

Barrett presented this letter to the managers of the Euclid Company. There was some discussion, as the result of which they and Barrett expressed their understanding that these lumps were in the form of small cubes or tablets one or two inches in size. Thereupon they gave Barrett their order for

1,000 bags, and a little later provided for the necessary letter of credit. He wired this order to Seago, making no mention of the size of the lumps, and Seago made immediate shipment. Upon arrival of the sugar in Cleveland, the vendee rejected it, because —as the vendor says,—the lumps were too large to be suitable for its use,· or,—as the vendee says,—because the market had broken. The vendor sold the sugar at a later market, and his assignee brought this action to recover its damages. No question was made as to the proper amount. At the conclusion of the jury trial, the court instructed a verdict for plaintiff.

 Upon the trial it was not denied that the sugar shipped was the same sugar which had been offered by the vendor and ordered by the vendee. The plaintiff was therefore entitled to a verdict, unless for some defense which had been both pleaded and proved. Under the peculiar facts of this case, involving controlling distinctions between closely similar situations, it is of unusual importance to know what defenses are pleaded. There were, perhaps, two. The first is: "By way of defense, this defendant says that on or about the 8th day of June, 1920, it gave its order for 1,000 bags of brown lump Panela sugar to the local agent of W. K. Seago and Charles A. Levy * * * that said order was given and purchase made by description; that at the time said order was given said Seago and Levy, partners, through their agent, represented that said lump sugar was in the form of cubes and tablets, similar to those used in ordinary table use, but varying in color and said representation was made for the purpose of inducing, and did induce, defendant to place the order." This we take to be a distinct admission of the existence of a contract of purchase, and a claim that the vendee was excused from performance by reason of the (later stated) breach of the vendor's warranty as to the character of the goods sold. The answer clearly states a contract which would have entitled the vendees to claim damage by reason of a breach of warranty,—if damage there had been. The trial below and the argument here proceeded, in part, upon the theory that there had been no meeting of minds of the principals nor any actual contract, because the vendee's acceptance was accompanied by a material modification or condition, to which condition the vendor never had agreed. No amendment of the defendant's pleading was asked for; and we think this theory was not open to it in the court below, or here. It planted itself upon the theory of a completed contract and a breach of the warranty therein contained. It must stand or fall upon that theory. Rankin and Barrett were known to the vendee to be what they were,—mere merchandise brokers, and not, in any general or further sense, salesmen or agents of the vendor. Merchandise brokers making an offer may have authority to close a sale, and thus to represent the vendor for that purpose. Not so where,—as here,—they must report to the vendor any offer by the vendee, and the offer must, expressly or impliedly, be accepted by the vendor before there is any contract. In such a case, merchandise brokers are messengers, carrying back and forth the statements or offers of the prospective parties. They are not agents, save in ·a very limited sense. They have no authority to carry any message except the one they have received. They have no actual authority to bind the vendor by representations as to the quality of the thing offered. Benjamin on Sales (6th Ed.) 319–321; Smith v. Tracy, 36 N. Y. 79, 83; Politziner v. Vanech, 101 Conn. 265, 125 A. 630.

There was no apparent authority beyond the actual. Barrett laid before the vendee the Seago letter, and it was read in full. This was the whole story. Put with the vendee's knowledge that Barrett was a mere broker, it leaves no basis for any rightful supposition that Barrett had power to represent that brown Panela lump sugar was something it was not. The record strongly suggests that what happened was a mistake by the vendee, rather than either a condition or a warranty; that the vendee applied to Barrett for information as it might have gone to a cyclopedia, and that Barrett stated his understanding, with an express disclaimer of any real knowledge; but, even if there were a warranty in form or effect, it was not supported by actual or apparent authority. It might be conceded that, if there were an underlying agency, the limited extent of which vendee did not know, a representation by the vendor's agent, without actual authority, but which induced the contract, might justify the vendee in refusing to go on, even though it would not support an action thereon (Williston on Contracts [2d Ed.] vol. 2, p. 1102); but, when the absence of authority is known to the vendee, both by the denomination "broker" and by inspection of the vendor's letter, we see no room to apply this principle.

The second defense, if it were really intended as a separate one, recites a promise

to send samples. This is hardly intended to present the defense of a sale by sample, because there is no complaint that the sugar, when it arrived, did not correspond with the sample, and the existence of such a defense is not argued in this court. It should not be construed as an alternative defense, denying the existence of any contract until the samples were seen, because that would be inconsistent with the first defense, and a second defense should not be so construed, unless it is clearly so intended,—as this is not. We take it rather to be an explanation and amplification of the main defense of breach of warranty, and therefore to present no further or different question.

The judgment of the court below is affirmed.