[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On June 24, 1991, the plaintiffs filed a three count complaint alleging that the defendant and his alleged agent[1]
failed to return a deposit tendered by the plaintiffs in response to an offer to purchase a boat from Finkel. In the first count, the plaintiffs allege that pursuant to an offer from the defendant Finkel, they paid a deposit of twelve thousand ($12,000.00) dollars which was to be held in escrow by Sloane, the alleged agent of Finkel. They further assert that their purchase of the boat was specifically subject to obtaining the necessary financing to secure the purchase. They continue by claiming that upon being repeatedly refused the necessary financing, they began demanding the return of their deposit and despite those repeated demands, Sloane has refused to return the deposit, and that Finkel has refused to authorize its return. In the second and third counts, there appears an allegation that the conduct of Sloane and Finkel in refusing to return their deposit constitutes a violation of the Connecticut Unfair Trade Practices Act (CUTPA), Sec. 42-110 et seq. of the General Statutes.
Finkel filed an answer and three special defenses wherein he asserts that: (1) the plaintiffs' delay in obtaining financing resulted in the diminution in market value of the boat and that should operate as a setoff; (2) the plaintiffs obtained financing but failed to purchase the vessel; and, (3) CT Page 706 the terms of the offer provide that the deposit be forfeited upon the plaintiffs' failure to pay the balance due. In addition to his special defenses, he filed a cross-claim against Sloane and a counterclaim against the plaintiffs. The counterclaim sets forth that the plaintiffs, some eight months later, refused to purchase his vessel despite their procurement of financing. As a result, the boat was sold for one hundred forty-four thousand ($144,000.00) dollars, a sum of forty-four thousand ($44,000.00) dollars less than the price he and the plaintiffs originally agreed upon.
The case was referred to an attorney trial referee whose report included a number of findings of fact. Among those findings were: (1) that the parties agreed that plaintiffs signed the offer to purchase and delivered to Sloane a check in the amount of twelve thousand ($12,000.00) dollars payable to Sloane Yacht Sales, Inc. (not a party to this action) as required by the offer to purchase; (2) that pursuant to the offer to purchase, the plaintiffs made attempts to obtain financing but were denied on at least six occasions; (3) that the plaintiffs notified Finkel and Sloane of their failed attempts to obtain financing and, accordingly, demanded return of the deposit; (4) that Finkel instructed Sloane to return the deposit, and Sloane refused; (5) that the plaintiffs have never received any portion of the escrow funds; and, (6) that Sloane Yacht Sales, Inc., acting through Sloane, was the agent of Finkel.
Based upon those findings, the referee issued the following orders: (1) that judgment should enter against Finkel in the amount of twelve thousand ($12,000.00) dollars on the first count; (2) that judgment should enter in favor of Sloane and Finkel on the second and third counts; (3) that judgment should enter in favor of Sloane on the cross complaint, without prejudice, so that Finkel may file against the proper defendant; and, (4) that judgment enter for the plaintiffs on the counterclaim.
Finkel has filed a motion to correct and initially requested that the report explain how the plaintiffs proved, by a preponderance of the evidence that Sloane Yacht Sales was the agent of Finkel for the dual purpose of selling Finkel's boat and accepting the deposit for escrow. He also requested the legal basis for the imposition of interest and costs of suit. He has subsequently requested the following CT Page 707 additions: (1) how the conversion of money by Sloane, Finkel's alleged agent, could be imputed to Finkel; and, (2) how the plaintiffs can recover on the first count, where they alleged that Finkel had refused to authorize the return of the deposit, while the referee's report states, in part, that Finkel instructed Sloane to return the deposit.
On November 15, 1993, the court, Moraghan, J., denied Finkel's motion to correct on the ground that Finkel's motion, if granted, would substitute Finkel's desired findings for the referee's actual findings. On November 24, 1993, Finkel filed objections, pursuant to Sec. 440 of the Practice Book to the acceptance of the report. Sec. 440 provides:
 A party may file objections to the acceptance of a report on the ground that conclusions of fact stated in it were not properly reached on the basis of the subordinate facts found, or that the committee erred in rulings on evidence or other rulings or that there are other reasons why the report should not be accepted.
 If an objection raises an issue of fact the determination of which may require the consideration of matters not appearing in the report or stenographic notes of proceedings before the committee, the adverse party shall, within two weeks after the filing of the objection, plead to it by a motion to strike, answer or other proper pleading.
An attorney referee is a fact-finder whose determination of the facts is reviewable in accordance with the rules of practice found in Secs. 428 through 444 of the Practice Book. Bernard v. Gershman, 18 Conn. App. 652, 654. If a party wishes to have the facts added to or corrected, he must file a motion to correct the report which is then acted upon by the referee. If the referee does not make the requested change, the moving party may file an exception seeking to have the court correct the report. Bernard v. Gershman, supra, 654-655. Failing to file exceptions constitutes in effect a waiver of the right to attack the subordinate factual findings contained in the report. Greenwich Federal Savings Loan v. Wu, Superior Court, Judicial District of Stamford/Norwalk at Stamford, No. 118739 (April 6, 1993, Lewis, J.). CT Page 708
Finkel claims that his objections are based upon the report's failure to find subordinate facts in support of the conclusions of fact, and that the report contains errors of law. His first objection alleges that paragraph 6 of the complaint states: "[t]he Defendant, Abraham Finkel, has refused to authorize the return of said deposit" while paragraph 27 of the referee's report states that "Finkel instructed Sloane to return the deposit." Based on the foregoing, he argues that finding in the plaintiffs' favor on the complaint is incongruous with the factual finding as recited in paragraph 27 of the referee's report. His second objection states that although the report found that Sloane was Finkel's agent, Sloane's "conversion" of the deposit is not imputable to Finkel as a matter of law, citing Politziner v. Vanech, 101 Conn. 265. His third objection states that the contract entered into by the parties provides for the forfeiture of the deposit, but not for its transfer to him. Finally, he argues that he should not be liable for Sloane's criminal conduct.
"An objection is addressed to the referee's legal conclusions while an exception challenges its findings of fact." Martino v. GM Excavating, Inc., Superior Court, Judicial District of Ansonia/Milford at Milford, No. 034924 (February 3, 1993, Jones, J.). "Although the defendants did file objections to the acceptance of the report, Practice Book, Sec. 440, they did not file exceptions to the report asking this court to correct the report, nor did they file a transcript of the trial. Practice Book, Sec. 439. It follows therefore that the factual findings by the referee must stand uncorrected." Greenwich Federal Savings Loan v. Wu, supra. Consequently, only legal issues are subject to review in this case. These are whether, based on Politziner v. Vanech, supra, "Sloane's conversion of the funds is not imputable to Finkel as a matter of law," and whether the contract, by its own terms, provides for the deposit's forfeiture, but not its transfer, to Finkel.
"A merchandise broker merely employed to sell certain merchandise is not a general agent of his principal as to such sale, whose statements in the transaction and whose information acquired in the transaction, become the statements and information of the seller. An employment of a broker to sell merchandise by an owner does not import any other CT Page 709 authority on the part of the broker than to bring buyer and seller together in order that they may enter into a contract of sale. The broker cannot enter into a contract on behalf of the seller or otherwise bind him. He earns his commission by finding a purchaser at the terms of the vendor. A mere broker in a sale transaction, whether of merchandise or real estate, is one who is employed to bring buyer and seller together in order that they may enter into a contract of sale. Unless specially authorized he has no authority to enter into a contract and bind his employer." Politziner v. Vanech, supra, 275. However, a close examination of Politziner reveals that the above quoted passage addresses the issue of whether a sugar broker employed to sell sugar for a party to a contract for the sale of goods has authority to make express representations relative to the kind and quality of sugar, so that a buyer, if not satisfied with the quality of the sugar, can be relieved from his duty to pay due to a breach of a seller's express warranty. The facts of Politziner are not analogous to the facts of the present action, therefore, it is unpersuasive.
The Offer to Purchase lists Sloane Yacht Sales, Inc. as the broker. The contract further states that the twelve thousand ($12,000.00) dollar deposit is to be held in escrow subject to certain stipulations, one of which is the condition that the plaintiffs secure adequate financing. The contract, by its own terms, states that "I (We) recognize Sloane Yacht Sales, Inc. . . . as the recipient and holder of the deposit" and is signed by Abraham Finkel. The trial referee found that the plaintiff, by a preponderance of the evidence, has proven that Sloane Yacht Sales acting through Sloane was the agent of Finkel and that judgment should enter in favor of plaintiff and against Finkel in the amount of twelve thousand ($12,000.00) dollars. "In a contract action, findings of fact should be overturned only when they are clearly erroneous." Wilcox Trucking, Inc. v. Mansour Builders, Inc., 20 Conn. App. 420,425, cert. denied, 214 Conn. 804. The referee's findings are not clearly erroneous, and Finkel has not provided the court with contra authority. The objection to the acceptance of the referee's report is overruled, and judgment may enter in accordance therewith.
Moraghan, J.