THE CITY OF BRIDGEPORT vs. UNITED STATES FIDELITY AND GUARANTY COMPANY.*

Third Judicial District, Bridgeport, April Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

The E. Co. contracted with the plaintiff to erect the movable span superstructure of a new drawbridge, all other parts of which, with the knowledge of the E. Co., were to be constructed under an independent contract made by the plaintiff with the H. Co. In order that traffic might not be suspended, both contracts provided that the existing bridge at this point should not be removed until the north half of the new structure was in a condition for use during the building of the south half; and in furtherance of this plan of construction, the E. Co. agreed to finish its portion of the work on the north half within ninety days after notice that the necessary preliminary operations by the H. Co. had been completed. Although this stage was reached, with notice to the E. Co., on December 1st, 1916, it did not erect the north half of the movable span until the following August; and, as a consequence, the work of the H. Co. upon the south half was carried into the winter months with a resulting increase to it of time, difficulty and expense. The present action was brought against the surety upon the bond given by the E. Co. to ensure the due performance of its con-

* See page 92.

Bridgeport *v.* United States Fidelity & Guaranty Co.

tract, to recover the sum of $98,305, which the plaintiff had been compelled to pay to the H. Co. because of the cost to it, in excess of the contract price, of building the south half of the bridge. The jury rendered a verdict in favor of the plaintiff for this amount, which the trial court refused to set aside. *Held* that the trial court erred, since there was no evidence of an essential element of the plaintiff's cause of action, viz., the connection between the delay of the E. Co. and the compulsory payment by the plaintiff to the H. Co.; and that the holding of the trial court, that the existence of this connection could be reasonably inferred from the admissions in the defendant's answer, was untenable.

A judgment concludes none but the parties or privies to it.

A judgment against a principal is admissible in an action against his surety or indemnitor, though not a party to the original suit, as prima facie evidence of the fact of the judgment, its amount, and the cause of action upon which it was based, subject to the right of the surety or indemnitor to make any defense against it which he might have raised had he been a party to it. This rule of procedure, based upon the improbability that the principal would have suffered an unjust judgment to be rendered against him, relieves the plaintiff of the unfair burden of again proving the cause of action upon which it was founded, and promotes the public interest in that it tends to shorten litigation, since, generally, the judgment cannot be successfully attacked except for fraud or collusion.

In the present case, the plaintiff offered in evidence the judgment-file in the action brought against it by the H. Co. to prove that in consequence of the failure of the E. Co. to erect the movable span superstructure within the time limited by its contract, and in consequence of the action brought by the H. Co. in which it was alleged that the plaintiff was liable to it for this delay in the progress of the work, the plaintiff was compelled to pay the H. Co. $98,305, and that this was the damage suffered by the plaintiff as the result of the breach by the E. Co. of its contract. The trial court excluded the offer on the ground that, at most, the judgment-file was admissible merely to prove the amount, already admitted in the defendant's answer, of the plaintiff's payment to the H. Co. *Held* that the trial court erred, since the judgment-file was admissible as prima facie evidence upon all the grounds claimed by the plaintiff.

In order that a provision for the payment of a stipulated sum upon a breach of contract may be regarded and enforced as one for liquidated damages, it must appear that the damages to be anticipated as resulting from the breach were uncertain in amount or difficult to prove, that the parties intended to liqui-

Bridgeport *v.* United States Fidelity & Guaranty Co.

date them in advance, and that the amount stipulated was a reasonable one, that is, not greatly disproportioned to the presumable loss or injury.

The contract in the present case provided that the plaintiff should be entitled to deduct from the moneys due, or to become due, to the E. Co. "the sum of fifty dollars per day for each and every day the time employed upon such work may exceed the time stated in the agreement for its completion" and that this sum is "agreed upon, fixed and determined by the parties to the contract as the liquidated damages that the City will suffer by reason of such default." *Held* that this provision applied only to the indefinite and indeterminate damage which would result to the public from the loss of use of the bridge during the period of delay, and not to the circumstances of the present case where the damages, though incapable of estimation in advance, were readily ascertainable, after they occurred, by recognized legal methods, and where, from the situation and conduct of the parties, including the possibility, which must have been apparent to the plaintiff, that it might incur a loss in the form of a liability to the H. Co. greatly in excess of the stipulated sum, and including the fact that it exacted a bond from the E. Co. in the amount of $109,264, which was obviously higher than any presumable claim under the provision in question, it would be unreasonable to impute to the parties an intention to restrict the plaintiff's right of recovery to this grossly inadequate amount.

Certain remedies provided in the contract of the E. Co. which were obviously intended to cover situations where the plaintiff might take over, or otherwise assume, the conduct of the work, could not be construed, as claimed by the defendant, to be exclusive and, therefore, a bar to the maintenance of the present action.

A statute of limitations suspends the remedy but does not cancel it.

Where, as in the present case, the contract of the surety is under seal, and that of the principal is not, the barring of an action against the latter by the expiration of the six-year period of the statute of limitations, does not extinguish the liability of the surety which remains in full force and effect until the expiration of the seventeen-year period applicable to contracts of that nature.

Argued April 20th—decided July 30th, 1926.

Action upon a bond given to the plaintiff to ensure the performance by the Empire Construction Company of a contract for the construction of a bridge,

brought to the Superior Court in Fairfield County where the demurrer to the substituted complaint was overruled (*Marvin, J.*) and the demurrer to the answer to the substituted complaint was overruled *pro forma* (*Ells, J.*) and the issues later tried to the jury before *Banks, J.;* verdict and judgment for the plaintiff for $98,305, and appeal by the defendant. *Error and new trial ordered.*

*Carl Foster,* with whom was *Lorin W. Willis,* for the appellant (defendant).

*William H. Comley,* with whom was *Alexander L. DeLaney,* for the appellee (plaintiff).

WHEELER, C. J. We consider first the denial of the motion to set aside the verdict. The following facts are either admitted or undisputed: In August, 1915, the city of Bridgeport caused to be prepared plans and specifications for a completed drawbridge to be constructed across the Pequonnock River in Bridgeport. Its six parts comprised substructure, fixed span substructures, movable span substructures, operators' and comfort houses, approaches, removal of existing structures, and dredging channel. These plans and specifications were submitted to Empire Construction Company, hereinafter called the Empire Company, and it submitted a bid for the completed bridge. The Holbrook, Cabot and Rollins Corporation, hereinafter called the Holbrook Corporation, submitted a bid for all parts of the bridge except the movable span superstructure, and plaintiff, on October 5th, 1915, entered into a written contract to build the bridge with the exception of the movable span superstructure, and to complete the work on or before October 31st, 1916. The Empire Company also submitted its bid to build the movable span superstructure, and on October 19th,

1915, entered into a written contract with the plaintiff for the construction of the movable span superstructure. It at this time had full knowledge of the contract with the Holbrook Corporation.

Before the new bridge was undertaken, there was a bridge at this point. In order to keep the traffic moving it was necessary that the old bridge remain in operation until a part of the new bridge be in operation. Accordingly, the construction of the bridge was divided into two parts, a northern and a southern half; the northern was to be, and was, built first, and after its completion traffic was turned over it, thus enabling the old bridge to be removed and the southern half of the new bridge to be built. When this half was completed, the two units made a completed structure.

The substructure of the bridge is the part from the foundations to the lower part of what is called the superstructure, that is, it is the piers upon which rests the upper part of the bridge. The fixed span of the superstructure was the traffic carrying part. It is located on each side of the bascule span. This was the draw part of the bridge; this kind of a drawbridge is called a jack-knife bridge. It opens and shuts to let boats pass through. This bridge is composed of four parts, two on its east and two on its west side, and each separated from the other, and when down makes a level and uniform highway surface. In both the Holbrook Corporation and the Empire Company contracts it was provided that the old bridge should be maintained for traffic until the north half of the proposed bridge should be completed and open for traffic, and that thereafter the old bridge should be demolished and the new bridge completed within the time limited by these contracts.

The Empire Company submitted its bid and entered into its contract with the full knowledge of the Hol-

brook Corporation contract, and that the execution and completion of the latter contract was dependent upon the full performance by the Empire Company of its contract. The contract of the Empire Company required it to commence the work thereunder within ten days of the date thereof, and furnish all anchorages, supports, grillages, etc., which were to be built up with masonry, within sixty days from the agreement, and to complete the north half of the bridge and place the same in operation within ninety days after receiving notice that the north half of both bascule piers was ready for the movable span superstructure. The Holbrook Corporation got the north piers ready for the .superstructure on December 1st, 1916; the Empire Company having notice of this a month before. The superstructure, which was to be completed in ninety days, was completed August 17th, 1917. Until this was completed the Holbrook Corporation was not able to proceed with the substructure for the south half, and traffic could not be diverted from the old bridge until the north half of the bascule span was ready for it. The delay in completing the north half until August 17th, compelled the Holbrook Corporation to carry on the building of the substructure into the severe winter months. Doing the work in these months after August 17th made the work harder and slower than if done in the spring, summer or fall, and the cost of the work much more. The cost of the work under the contract with the Holbrook Corporation was increased to the amount of $98,305.05 beyond the contract price, which increase was due to the excess cost of labor and materials and the expense of maintenance of plant and equipment, and the plaintiff has been obliged to pay to the Holbrook Corporation this excess cost for the construction of the bridge.

On October 19th, 1915, the Empire Company as

principal and the defendant as surety, executed and delivered to the plaintiff a bond in the sum of $109,-264.70, conditioned that the Empire Company should in all respects comply with the terms of the contract with plaintiff and save it harmless from all damages or loss to which the plaintiff might be subjected by reason of any default by the Empire Company in the execution of its contract.

The complaint is in two counts; the first alleging delay on the part of the Empire Company in completing the north half, and the second alleging delay in completing the south half. No claim is made that there was evidence tending to support the second count. Further, no evidence was offered in support of the allegations of paragraphs eleven and twelve of the first count alleging delay in furnishing trunnion posts. The case as tried was confined to the claim under the first count, that the Empire Company failed to complete the north half of the movable span within ninety days after receiving notice that the piers were ready for it. It is further alleged in the first count, and these allegations are denied by defendant, that by reason of this delay of the Empire Company the plaintiff could not fulfil its contract with the Holbrook Corporation and was delayed six months before the north half of the bridge was opened for traffic; that in consequence of this default of the Empire Company and the delay to the Holbrook Corporation resulting therefrom, the cost of the work to the Holbrook Corporation was increased the $98,305.05 beyond the contract price, which increase was due to the excess cost of labor and materials, and the expense of maintenance of plant and equipment, and that by reason of the default of the Empire Company the plaintiff was obliged to pay the excess cost of $98,305.05 for the construction of the bridge.

The Holbrook Corporation was to complete the substructure work prior to October 31st, 1916. It did not do this until December 1st, 1916. There was no evidence offered that the Empire Company was responsible for this delay. The only default for which the Empire Company could be held responsible, was for the failure to complete the north half of the movable span within ninety days from December 1st, 1916. It was essential to plaintiff's case that the payment by the city to the Holbrook Corporation be connected with the Empire Company's default in such way as to make the Empire Company and, therefore, its surety, the defendant, responsible. Appreciating this, plaintiff's counsel offered in evidence, as prima facie proof of this, a judgment obtained by the Holbrook Corporation against plaintiff. This was excluded. There then appears in the evidence offered proof of the fact of the delay and of the compulsory payment of this sum by the plaintiff to the Holbrook Corporation. There was also evidence, offered by the plaintiff, that the fact that the Holbrook Corporation had to do this work after August made it cost more because required to be done slower and in the inclement season. There the evidence stops. It does not tend to connect the delay caused by the Empire Company with the increased cost to the Holbrook Corporation, or the payment made by the plaintiff to it. That connection is clearly alleged in paragraphs fourteen to eighteen of the complaint. Without allegations showing such connection, the complaint would have been demurrable. It was indispensable to plaintiff's cause of action as stated in the first count that it make out a prima facie case, that the Empire Company by its delay caused the city of Bridgeport to be under obligation to the Holbrook Corporation for this amount paid by it.

The trial court construed the admission of the de-

fendant that the cost of the work under the contract with the Holbrook Corporation was increased in this amount, which increase was due to excess of cost of labor and materials and the expense of maintenance of plant and equipment, and that this excess sum the plaintiff has been obliged to pay the Holbrook Corporation for the construction of the bridge, into an admission that this payment was because of the delay and default of the Empire Company. That the payment was made in consequence of the delay and default of the Empire Company, the trial court holds to be an inference which the jury were justified in making. Upon the evidence offered by the plaintiff, we are of the opinion that no such inference could reasonably be made. The motion to set aside the verdict should have been granted. The conclusion reached compels us to grant a new trial.

The demurrer to the substituted complaint, as well as that to the substituted answer, involves questions which the parties are entitled to have disposed of on this appeal. But before we take 'these up, we purpose disposing of the plaintiff's bill of exceptions, which concerns the exclusion of the judgment-roll entered in behalf of the Holbrook Corporation in its action against the plaintiff, since this ruling can best be understood in connection with the facts considered on the appeal from the denial of the motion to set aside the verdict.

The judgment-file in the case of the Holbrook Corporation v. The City of Bridgeport was offered in proof, (1) of the allegations of the complaint that the city had been compelled to pay the Holbrook Corporation the sum of $98,305.05 in consequence of the failure of the Empire Company to erect the movable span within the time limited by the contract, (2) that this payment was made in consequence of the failure

of the Empire Company to erect the movable span within the time limited by the contract, (3) that the payment was made in consequence of the action brought by the Holbrook Corporation against the city alleging that it was liable to the Holbrook Corporation for its failure to have the movable span completed within the time limited by the contract, and (4) to prove the damage suffered by the city in consequence of the default of the Empire Company in failing to build the movable span within the time prescribed by the contract. The defendant objected to the admission of the judgment-file upon the grounds, (1) that it was not binding upon the defendant since it was not a party to that proceeding, (2) that the payment by the city was not evidence of the amount of damages suffered by it in consequence of the alleged default by the Empire Company, and (3) that by reason of the defendant's admission of the allegation that the city was obliged to make this payment, the judgment-file should be excluded. The court ruled that the judgment-file was admissible to prove the amount paid by the city to the Holbrook Corporation, and overruled the other claims as to its admissibility, and further ruled that upon the admissions of the defendant's amended answer it would be prejudicial to the rights of the defendant to receive it in evidence solely to prove the admitted fact of payment, and therefore excluded the file. The importance of this offer is manifest. No evidence outside the judgment-file had been offered tending to show that the payment made to the Holbrook Corporation was on account of the default of the Empire Company. The making of that connection was an indispensable part of the plaintiff's case.

When a contractor recovers a judgment against an owner for the breach of his contract with the con-

tractor, resulting from the breach by another contractor of his contract with the owner, the judgment thus obtained is prima facie evidence, in an action by the owner against the surety to the owner for the other contractor, of the fact and amount of the judgment, and that the contractor's default was made in consequence of the breach of the other's contract with the owner, in short, of the cause of action upon which the judgment was based. The difficulty of again proving the case in which the judgment was rendered, perhaps long after the transaction out of which it arose, and the improbability that an owner would suffer a judgment to be rendered against him which was unjust, either through negligence, or incompetent defense, making its trustworthiness upon its face credible, are among the principal considerations which have led to the very general rule that such a judgment will, in an action against a surety of the principal, be prima facie evidence of the amount of the recovery, its payment under compulsion, and the cause of action upon which the judgment was rendered. This rule leaves open to the surety any defense he might have made had he been a party to the action against the principal. It places the burden of disproving the correctness of the judgment upon the surety. It is a rule of procedure, made for the benefit of the plaintiff litigant, and also made in the public interest. In the great majority of cases of this character the surety cannot successfully attack the judgment upon any of the grounds upon which it has been admitted as prima facie evidence, except for fraud or collusion; hence the rule of procedure tends to shorten litigation without depriving litigants of any substantial rights. The admission of the judgment-file for this limited purpose in no wise conflicts with the rule that a judgment concludes none but parties or privies to it.

It is generally held that a surety who contracts for the faithful performance of duty by a public official is either concluded by a judgment to which he was not a party or privy, or else that the judgment is prima facie evidence of the surety's liability. 1 Freeman on Judgments (5th Ed.) § 460; *Commonwealth* v. *Fidelity & Deposit Co.,* 224 Pa. St. 95, 73 Atl. 327. Chief Justice Shaw, in *Lowell* v. *Parker,* 51 Mass. (10 Metc.) 309, 315, states the rule thus: "When one is responsible, by force of law or by contract, for the faithful performance of the duty of another, a judgment against that other for a failure in the performance of such duty if not collusive, is prima facie evidence, in a suit against the party so responsible for that other. If it can be made to appear that such judgment was obtained by fraud or collusion, it will be wholly set aside." See also *Moses* v. *United States,* 166 U. S. 571, 17 Sup. Ct. 682; *American Surety Co.* v. *Morris,* 78 Colo. 504, 242 Pac. 983, 985; *Dixie Fire Ins. Co.* v. *American Bonding Co.,* 162 N. C. 384, 392, 78 S. E. 430. A similar rule prevails in the case of sureties on bonds of executors, administrators and guardians, although the majority of the authorities hold the surety concluded by the judgment against his principal in this class of cases. In *Willey* v. *Paulk,* 6 Conn. 74, we held the sureties of a deceased executor were privies in contract to a judgment recovered against the executor by a creditor of his testator, and therefore the judgment was conclusive to show a breach of the bond and the amount of the damages. So sureties on a replevin bond are, as a rule, held to be concluded by a judgment against their principals, but in some cases the judgment is held to be prima facie evidence of liability. *Cohen and Hammond, Inc.* v. *Arnold,* 250 Mass. 255, 145 N. E. 463; *Shaver* v. *Kappellas,* 83 Ind. App. 339, 146 N. E. 858; *Hafner* v.

*U. S. Fidelity & Guaranty Co.,* 126 Wash. 670, 219 Pac. 16; *Holtz* v. *Riddell,* 101 Conn. 416, 126 Atl. 333. *Levick* v. *Norton,* 51 Conn. 461, was an action of *scire facias* brought under a statute against an owner of a vehicle for damage caused by a driver of the vehicle through neglecting to turn to the right in passing teams met on the highway, the statute providing that the owner shall, if the driver is unable to do so, pay the damages to be recovered in an action of *scire facias.* We held that the statute imposed a statutory suretyship, and that the judgment against the driver was conclusive against the owner—the statutory surety— as to the amount of the damages, unless he could show that the judgment was obtained by fraud or collusion.

In *Baltimore & Ohio R. Co.* v. *Howard County Comrs.,* 111 Md. 176, 186, 73 Atl. 656, a judgment had been recovered against a county by one injured by a defect in a highway caused by a railway. In an action against the railway this judgment was admitted in evidence, not as conclusive, but as a part of the plaintiff's case, that is, as prima facie evidence of the damages. In *Hopkins* v. *National Surety Co.,* 154 La. 61, 63, 97 So. 297, 298, in an action against a surety on an indemnity bond given by a street-railway company and conditioned for the payment for injuries sustained through the operation of its vehicles, it was held that the judgment against the railway, though not conclusive, was prima facie evidence against the surety. The statute of Arkansas required an insurance company to execute a bond to the State of Arkansas for the use and benefit of the beneficiaries in policies of insurance issued in that State. It was held by the Circuit Court of Appeals of the Eighth Circuit, in an action by a policyholder against the surety on this bond, that the judgment against the insurance company, not being collusive, was prima facie evidence of the damages re-

covered therein. *Union Guaranty & Trust Co.* v. *Robinson,* 79 Fed. 420. See also *Baxter County Bank* v. *Ozark Ins. Co.,* 98 Ark. 143, 135 S. W. 819; *Ingle* v. *Batesville Grocery Co.,* 89 Ark. 378, 117 S. W. 241. The court, in *Calhoun* v. *Gray,* 150 Mo. App. 591, 597, 131 S. W. 438, points out the distinction and the reason therefor, in the effect of a judgment against a principal in an action by the plaintiff in that action on a bond given for the performance by that principal, where the undertaking of the surety is tò pay a judgment or do something else dependent upon pending litigation, such as the payment of costs adjudged therein, and the action against the surety in the ordinary action. In the former case, the judgment against the principal is conclusive; in the latter, prima facie evidence. "But," the court says, "in cases where the sureties are not parties to the record or given an opportunity to defend by appropriate notice, a judgment establishing the obligation against the principal is not conclusive on the doctrine of privity alone, and if it is conclusive at all against the sureties, it is because of the form the obligation has taken and not from the principles of law which obtain. Indeed, the general rule is that a judgment against a principal, instead of being conclusive, is only prima facie evidence against the surety to show the breach of the contract and liability thereunder. Ordinarily the judgment against the principal is received in evidence for such prima facie purposes and the surety is permitted to defend, as was done in this case, by showing a good defense to the action which might have been asserted by the principal." See also *Conner* v. *Reeves,* 103 N. Y. 527, 529, 9 N. E. 439, where the covenant was one of general indemnity merely against claims and suits, the judgment against the principal was held admissible against the indemnitor or surety even though he had no notice of that

action, as "prima facie evidence only against the indemnitor, and he may be let in to show that the principal had a good defense to the claim." See also *Bridgeport Ins. Co.* v. *Wilson*, 34 N. Y. 275, 280. *Grand Rapids Lumber Co.* v. *Blair*, 190 Mich. 518, 157 N. W. 29, was an action by an employer who had paid its employee compensation for an injury under a workmen's compensation act, and sued a third party alleged to be responsible for the employee's injury to recover as damages the compensation so paid. The court ruled that the judgment for compensation was admissible as prima facie evidence of the third party's liability, in these words (p. 526): "This case involves a relation of indemnitee and indemnitor, in which a liability over is placed upon the original tort-feasor whose negligence caused the injury, a relation which may be created by contract or legislation for protection of the party who, though not actively guilty of the tort, may, by law, be liable therefor to the injured party. In such cases the weight of authority indicates that a former judgment against the indemnitee, in which notice of the litigation is not given to the party who may be liable over, is adequate to create a right of action against the latter, and admissible as prima facie proof of his liability, though the omission to give notice gives him the right to make any defense which he could have made in the former action, with the burden of proof shifted to him."

We now cite two rulings in actions against an indemnitor or sureties of a contractor. Where a judgment was rendered against a principal contractor for the negligence of his subcontractor, this judgment was held admissible in a subsequent action by the principal contractor against this subcontractor and held conclusive as to the fact of the judgment, its amount, and the cause of action upon which it was rendered, but

did not conclude the indemnitor from making any defense he was entitled to make in the former action. *Mitten* v. *Caswell-Runyan Co.*, 52 Ind. App. 521, 99 N. E. 47; *Grant* v. *Maslen*, 151 Mich. 466, 115 N. W. 472. These citations will suffice to show how generally judgments against a principal are admitted against a surety, who has neither appeared nor had notice of the former action, either as conclusive or prima facie evidence against the surety. Reference to Freeman on Judgments, Vol. 1 (5th Ed.) §§ 455-491; to Notes to 40 L. R. A. (N. S.) 725; 52 L. R. A. 170; L. R. A. 1918E 814; 9 Amer. & Eng. Anno. Cases, 153; to 23 Cyc. 1271, and to 32 Cyc. 134, 135, will give the greater number of the many cases on this subject.

The authorities in earlier days indicate some diversity of view, and the defendant's contention finds support in some of these authorities. The divergence today appears to be mainly as to whether the judgment against the principal is conclusive or only prima facie evidence. The large majority of the cases in later years hold the judgment against the principal admissible against the surety who was neither a party to the action against the principal, nor had notice of it, as merely prima facie evidence. We are of the opinion that this is the true rule and that the judgment against the principal in an action against the surety or indemnitor is merely prima facie evidence of the fact of the judgment, its amount, and the cause of action upon which it was based. It is not necessary to refer in detail to the various cases cited by the defendant. They are as a whole clear instances of the conclusive judgment. *Waterbury* v. *Waterbury Traction Co.*, 74 Conn. 152, 50 Atl. 3, is of this character. A reference to page 162, will make this clear; the defendant had been notified of the suit, requested to defend it and offered an opportunity to appear and protect its

interests. This class of cases has a very remote appli-
cation to the immediate question before us. In its
consideration of a case of this character the court, in
*Chamberlain* v. *Carlisle,* 26 N. H. 540, 553, in its desire
that its discussion should not be misapplied to cases
of the character of the instant case, concluded its opin-
ion with these observations: "In the remarks which we
have made, we do not, of course, intend to be under-
stood as holding that judgments between third parties
are not at any time admissible. They may be used by
strangers to the record by way of inducement; or to
establish collateral facts; or to show that the suit has
been determined. They are also admissible to prove
that the judgment was actually rendered at such a time
and for such an amount; and, in proper cases, to show
the amount that a principal has been compelled to pay
for the default of his agent, or the amount which a
surety has been compelled to pay for the principal
debtor." Either the prima facie evidence or the con-
clusive evidence rule is, of course, inapplicable if the
terms of the contract of the parties determine the mat-
ter, and in no event can the judgment be held con-
clusive as against fraud or collusion in its rendering.

Plaintiff's counsel construe defendant's demurrer to
the substituted complaint as presenting a single ground
of demurrer, that the terms of section six of the con-
tract bar plaintiff from a recovery in this action because
this section of the contract fixes the measure of dam-
ages at $50 a day for every day the work may exceed
the time of completion fixed by the contract, and limits
plaintiff to the remedy of deducting this sum from the
amount which may be then due the contractor. Sec-
tion six is as follows: "The City shall be and is hereby
authorized to deduct out of the moneys which may
be due or become due to the said contractor under this
contract, as damages for the noncompletion of the

work aforesaid within the time hereinbefore stipulated for its completion, or within such further time as in accordance with the provisions of this agreement shall be fixed or allowed for such performance or completion, the sum of fifty dollars ($50) per day for each and every day the time employed upon said work may exceed the time stated in the agreement for its completion, or such period of time as the same may be increased, as hereinbefore provided, which said sum of fifty dollars ($50) per day is hereby, in view of the difficulty of estimating such damages, agreed upon, fixed and determined by the parties to the contract as the liquidated damages that the City will suffer by reason of such default, and not by way of penalty."

If this construction is the correct one, the entire damages recoverable under the contract are limited to a stipulated sum per day covering the period by which the specified time of completion of the contract is exceeded. The payment of the stipulated sum provided in section six, in the event of a breach of the contract, can only be regarded and enforced as one for liquidated damages when these conditions exist: "(1) the damages to be anticipated as resulting from the breach must be uncertain in amount or difficult to prove; (2) there must have been an intent on the part of the parties to liquidate them in advance; and (3) the amount stipulated must be a reasonable one, that is to say, not greatly disproportioned to the presumable loss or injury." *Banta* v. *Stamford Motor Co.*, 89 Conn. 51, 55, 92 Atl. 665; *Politziner* v. *Vanech,* 101 Conn. 265, 125 Atl. 630. The stipulated sum provided in section six cannot be brought within any except the first of these conditions. The damages which may accrue upon the failure to complete the contract within the period designated in it are necessarily uncertain and difficult to prove; the damage from loss of use

of a public bridge would be an exceedingly difficult matter to prove. The damage which may accrue to the city in consequence of the failure of its subcontractor to fulfil his contract cannot be anticipated nor estimated in advance, since they are dependent on too many undetermined contingencies and conditions. But these can be measured, when they occur, by the methods prescribed in the law. The damages liable to be caused the Holbrook Corporation might be very large as the city might readily have anticipated; these, it would realize, it would be liable for under its implied obligation. If the city has limited itself to the per diem remedy of the contract, as to all other forms of damage suffered by it under the contract it would be remediless. Is it credible that it intended, by the insertion of this provision, this outcome? It exacted from the Empire Company a bond in the penal sum of $109,264.70. Obviously it did not intend a bond of this amount as security for the per diem provision of the contract. Damages based upon this provision might be, as it must have anticipated, greatly inadequate and highly inequitable. The obligation which the city entered into with the Holbrook Corporation was in no sense reciprocal to that which the Empire Company entered into toward the city if the defendant's construction prevails. Unless there be some relation of reciprocal obligation between the parties, the liquidated damage clause will not provide just compensation. It would be wholly unreasonable to hold that the city intended a result which might obligate it for very large damages, and yet had limited, in its contract with a contractor, its damages to a stipulated sum, and thus measured the liability of the surety on the bond conditioned for the performance of the contract of this contractor. In such a situation the city might well inquire, for what purpose was this bond obtained?

The city never could have intended to liquidate damages of this character by this per diem provision. It must have anticipated that these kinds of damages were its loss, while the damage from the loss of use of a completed bridge was merely the inconvenience of the public. The amount stipulated in the contract is largely disproportioned to the actual loss to the city and to the loss which it might have anticipated. The liquidated damages provided for in section six, very clearly, were intended to provide for the contingency of failure on the part of the contractor to complete the bridge, for loss of use of which it would be difficult to measure the damages otherwise than by the method fixed by the contract. The several provisions of the contract and specifications fully demonstrate this. On the other hand, damages occurring through delays during the pendency of the contract, such damages as the city was compelled to pay the Holbrook Corporation, could be measured by the ordinary processes of the law. The point invites a fuller consideration, but the limits of this opinion forbid it. The trial court did not err in overruling the demurrer to the substituted complaint.

The defendant set up in the third defense of its answer that it was the intent of the parties that the remedy of the plaintiff for the default of the Empire Company should be one of the remedies provided by sections thirty-three, thirty-four and thirty-five of the contract. Plaintiff demurred to this on several grounds. We do not think it necessary to set forth these provisions of the contract nor the grounds of the demurrer, but rest with the statement that the remedies provided by these sections cover situations in which the city may, at its option, take over the work, or otherwise assume the conduct of the work. We have said enough in our discussion of the prior point to

indicate that these remedies are not the sole and only remedies of the plaintiff for the cause of action set forth in the complaint, nor did the parties to this contract so intend. The demurrer was well taken.

The second ground of demurrer upon which plaintiff relies is that to the second defense, which sets up the statute of limitations as a bar to this action. Defendant's claim under this defense is that as this action is brought upon a contract of suretyship, anything which discharged the principal discharged the surety, and since in this case the action against the principal is barred, and in consequence its liability extinguished, the action against the surety is also barred and its liability extinguished. This demurrer is predicated upon the sole ground that the cause of action set forth in the first count is based upon a contract under seal, and is not barred by the expiration of six years from the accrual of the cause of action, the statutory period in the case of the action against the principal. Defendant's defense rests upon two cases, Bernd v. Lynes, 71 Conn. 733, 43 Atl. 189, and Eising v. Andrews, 66 Conn. 58, 65, 33 Atl. 585, which it asserts have "clearly and unequivocally" decided that the liability of a surety is measured by the liability of the principal and ceases as soon as the claim is extinguished against the principal. It must be conceded that some of the language of these opinions lends support to the defendant's claim, unless the opinion be read, as it must be, as determinative only of the case presented upon its facts. Those facts made it applicable to the case before the court where both maker and guarantor were subject to the same statutory period of limitation. Where the principal and surety, as in the instant case, are subject to different statutory periods of limitation, the broad doctrine of these cases is not applicable. If so, we should have a situation

where the statutory period of limitation of seventeen years upon a contract under seal was by rule of law held inapplicable in a case where the period of limitation for the principal had run. A ruling so conflicting with a valid statutory provision could not stand; it would be beyond the power of the court to make. The application of the broad doctrine invoked by defendant that the claim against this principal had been extinguished is in conflict with our recognized doctrine that the statute of limitations suspends the remedy but does not cancel it. *Belknap* v. *Gleason,* 11 Conn. 160; *Parsons.* v. *Utica Cement Mfg. Co.,* 82 Conn. 333, 341, 73 Atl. 785. The authorities appear to interpose at least two exceptions, which would include the instant case, to the application of this broad doctrine. We do not purpose their consideration at this time as the demurrer is confined to the single point which we have sufficiently discussed and hold to be good. Nor do we find it necessary to determine the plaintiff's claim that the argument of the defendant departs from the defense as made in the pleading.

The other grounds of demurrer to the first count of the substituted complaint were properly overruled, and the demurrers to the other defenses to this first count properly sustained.

There is error and a new trial is ordered.

In this opinion the other judges concurred.