Robert B. WOODHULL, Appellant,

v.

MINOT CLINIC, a corporation, Angus L. Cameron, Paul H. Rowe and Paul J. Breslich, Appellees.

No. 15916.

United States Court of Appeals Eighth Circuit.

Sept. 19, 1958.

Joseph P. Stevens, Minot, N. D., and Harry Gottesfeld, San Francisco, Cal., for appellant.

Herbert G. Nilles and Nilles, Oehlert & Nilles, Fargo, N. D., for appellees.

Before GARDNER, Chief Judge, and JOHNSEN and MATTHES, Circuit Judges.

JOHNSEN, Circuit Judge.

The suit is one against a corporation, its officers and directors, to recover under North Dakota law the purchase price paid by plaintiff for some shares of stock in the corporation. Three purchases of stock are involved, made in the years 1945 and 1946. The suit was instituted in 1957. The trial court, on motion of the defendants, dismissed the action as being barred by the North Dakota statute of limitations. Plaintiff has appealed.

The basis of recovery set out in the complaint was that the defendants had fraudulently represented to plaintiff that the stock had been registered and was authorized to be sold under the North Dakota Securities Act or Blue Sky Law, N.D.Rev.Code of 1943, Ch. 10–04; that plaintiff had relied upon this representation; that the representation was false and the sales constituted a violation of the Act; that plaintiff did not discover this fact until January 24, 1956; and that, upon so discovering, he disaffirmed the purchases, tendered back the stock, and demanded the return of his money. Tender of the stock was renewed in the complaint.

The trial court held that the cause of action pleaded was subject to the six-year limitation imposed by § 28–0116, N.D. R.C.1943. It apparently regarded the suit as being one controlled by subdivision 1 of that section, covering actions upon implied contracts, obligations or liabilities.

At the time the sales of stock were made, the Securities Act did not provide any special right or remedy in favor of a purchaser because of the fact that the security had been sold in violation of the Act. The Act merely created penalties against sellers, of a criminal nature.

In 1951, by amendment, an absolute right was conferred upon purchasers of securities sold in violation of the Act to recover the purchase price, with interest and attorneys' fees. N.D.R.C.Supp.1953, § 10–0417. But a special limitation was imposed that "no action shall be brought under this section for the recovery of the purchase price after three years from the date of such sale or contract for sale nor more than one year after the purchaser has received information as to matter or matters upon which the proposed recovery is based."

The right of action so created was, however, not intended to preclude any common law or code remedy which might otherwise be applicable to the facts of a particular situation. It was expressly provided that the amendatory act "does not limit other statutory or common law

rights * * *", and also that, "In case of sales, contracts, or agreements made prior to the effective date of this Act, the civil rights and liabilities of the parties thereto shall remain as provided by the law as it existed at the time such sales, contracts, or agreements were made * * *". N.D.R.C.Supp.1953, § 10–0420.

The complaint sought to invoke the remedies available to plaintiff under either § 10–0417 or § 10–0420, above set out. The trial court held that § 10–0417 was without application to the situation, because of the provision of § 10–0420, subd. 1(b), that, as to sales made prior to the amendment of the Act (with its creation of the remedy of § 10–0417), "the civil rights and liabilities of the parties thereto shall remain as provided by the law as it existed at the time such sales * * * were made".

The court further impliedly held that, even if § 10–0417 could have had application, plaintiff's remedy thereunder would in any event be barred by the three-year limitation of § 10–0420, since the clause "nor more than one year after the purchaser has received information as to matter or matters upon which the proposed recovery is based", appearing after the three-year general provision, constituted a restriction upon and not an extension of that limitation period.

From the nature of the Act, as well as the language used, these views seem to us a more natural and logical construction of the section than to attempt to read the one-year provision regarding discovery in indefinite extension of the general three-year limitation, as plaintiff would do. The created remedy was for the fact per se that a sale contrary to the Securities Act had been made. It was without concern about whatever else may have occurred in the transaction. For any such other wrong as may have been involved, the purchaser's remedies were outside the Act. In respect to the remedy of the Act, a purchaser to whom affirmative representations had been made was in no different position than one to whom nothing had been said about the securities being registered under the Act. The Act equally allowed both of them a period of three years in which to become aware of the violation of the Act and to seek restitution of their money on this naked basis.

But in its purpose of preventing sales of unregistered securities, the Act was not interested in affording opportunity to purchasers having knowledge of its violation to sit back in gambling wait on how the purchases might otherwise turn out. Whenever a purchaser became possessed of knowledge that the sale to him had violated the Act, the responsibility was imposed upon him of moving forward promptly in furtherance of its preventive policy, if he desired to get his money back on that ground. He had to sue within a year thereafter. And if the legal violation was of such insignificance or lack of consequence to him in his holding of the stock as not for three years to have stirred his interest or have come within his knowledge, the Act allowed the curtain to drop on its remedial policy toward purchasers as to that particular transaction.

As we have indicated, the constructions made by the trial court of §§ 10–0417 and 10–0420 seem to us to be correct readings of the statute. In any event, they would have to be held to be so permissible and so lacking in persuasion of error as not to entitle plaintiff to have them declared clearly erroneous.

It has been the practice of this Court, ever since Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, to accord great weight to the considered opinion of a trial judge as to what the local law of his jurisdiction is; and we have repeatedly refused to overthrow a permissible conclusion by him on such a question unless we have a clear conviction that he is in error. Recent examples of such expression by us are to be found in Luther v. Maple, 8 Cir., 250 F.2d 916; Wood v. Gas Service Co., 8 Cir., 245 F.2d 653; Western Oil & Fuel Co. v. Kemp, 8 Cir., 245 F.2d 633; Milwaukee Ins. Co. v. Kogen, 8 Cir., 240 F.2d 613; State Mutual Life Assur. Co.

v. Wittenberg, 8 Cir., 239 F.2d 87; Bostian v. Universal C.I.T. Credit Corp., 8 Cir., 238 F.2d 809; Warner v. First Nat. Bank of Minneapolis, 8 Cir., 236 F.2d 853; Frank B. Connet Lumber Co. v. New Amsterdam Cas. Co., 8 Cir., 236 F.2d 117.

With the special remedy of § 10–0417 thus not being legally available to plaintiff, but with his claim for the return of his purchase money having, however, been asserted also on the basis that he had disaffirmed the contract for misrepresentation and tendered back the stock, and that defendants were accordingly not entitled to retain the consideration obtained from him, his action would in its character stand as one in quasi contract for the recovery of money had and received. See Restatement, Restitution, § 5; 34 Am.Jur., Limitation of Actions, § 93, pp. 77–78.

North Dakota law so categorizes the action. Its statutes make express provision for a legal right of rescission, unrelated to equity, § 9–0902, N.D.R.C.1943; and its courts have held that a suit to recover the consideration of a contract, after such a statutory rescission has been made, constitutes an action at law, and not one in equity. Schaff v. Kennelly, N.D., 61 N.W.2d 538, 546. The cause of action recognized as existing in these circumstances is "one upon a contract implied by law obligating the wrongdoer to restore whatever of value has been received". Sonnesyn v. Akin, 14 N.D. 248, 104 N.W. 1026, 1029.

Such a casting of state remedy into particular category would not necessarily be of importance in the diversity jurisdiction of the federal courts, except that North Dakota appears to accord to the effect of such a legal rescission a substantive significance on the party's remedial rights. Exercise of the statutory rescinding power in an applicable situation "abrogates and undoes the contract from the beginning", so that the transaction is thereby caused to be left without remaining form or substance. Fedorenko v. Rudman, N.D., 71 N.W.2d 332, 336. And it is not open to a party to escape that obliterating consequence, for "when he once elects, he must abide by his decision". Sonnesyn v. Akin, supra, 104 N.W. at page 1029.

The effect of this is that such a rescinding party is not allowed under North Dakota law to claim or recover damages for any deceit that may have been involved in the transaction, and he therefore cannot maintain his action to recover the consideration paid by him as one for damages in fraud. The only indulgence which seems to have been engaged in in this respect is that, where the contract is wholly valueless, so that the rescinding purchaser has in fact received nothing and has nothing to tender back, the North Dakota Supreme Court has refused to concern itself about the form in which he may have cast his attempt to get his money back, since the distinction and consequence as to his basis of recovery would be in that situation merely technical. See Donahue v. Noltimier, 61 N.D. 735, 240 N.W. 862, 864–865. Here, however, it is not claimed that the stock was itself worthless at the time of its purchase, as well as during the whole of the more than 10 years that plaintiff held it.

The application of the foregoing to the instant situation is that plaintiff seeks to have us regard his cause of action as one for fraud and to have it declared, in order to escape the limitation applied by the trial court, that his cause of action did not accrue until the discovery of the alleged misrepresentation as to the registration of the stock under the Blue Sky Law. He points to the provision of § 28–0116, subd. 6, N.D.R.C. 1943, prescribing a limitation of six years for "An action for relief on the ground of fraud in cases which heretofore were solely cognizable by the court of chancery, the cause of action in such cases not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud".

There is general text as well as decisional authority to the effect that such a statutory provision is without any application to an action at law. "Under a

statute which imposes the limitation in actions for 'relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery', if the action is at law or the remedy is concurrent, the statute has been held to have no application, although disguised as one seeking equitable relief, * * * where the allegations of fraud are incidental to, but not the ground of, the action." 53 C.J.S. Limitations of Actions § 91, at page 1068. And some States near to North Dakota have held that such a statute is without effect upon the accruing, as of the time that a transaction is had, of a cause of action for any fraud by which the transaction was induced. See Smith v. Middle States Utilities Co. of Delaware, 224 Iowa 151, 275 N.W. 158; Pietsch v. Wegwart, 178 Wis. 498, 190 N.W. 616.

In Roether v. National Union Fire Ins. Co., 51 N.D. 634, 200 N.W. 818, 822, the North Dakota Supreme Court posed the question as to the statute but did not decide it, saying: "In New York, whence our Code of Civil Procedure is derived, including section 7375 [here § 28–0116], supra, * * * did not apply to actions at law. Mason v. Henry, 152 N.Y. 529, 46 N.E. 837. It must be conceded that the rule is recognized by numerous authorities that have construed statutes similar to 7375, C.L.1913, although many well-reasoned cases may be found to the contrary, that a party shall not be permitted to take advantage of his own wrong by asserting mere lapse of time against another whom he has prevented, by fraud or other artifice, from enforcing his legal rights in timely proceedings at law; and that this rule constitutes an implied exception to or limitation of the statute, applicable alike to actions at law and suits in equity. See Waugh v. Guthrie [Gas, Light, Fuel & Improvement Co.], 37 Okl. 239, 131 P. 174, L.R.A. 1917B, 1253, where the authorities on both sides are collected; and Wood, Lim. of Actions (4th Ed.), sec. 274, p. 1359. Under the facts in the record and the issues as made on this appeal, it is neither necessary nor proper to decide which rule is correct and should be adopted in this state, and we express no opinion on that subject".

Nor does the question seem to have ever been subsequently considered and decided by the North Dakota Supreme Court. In any event, whatever might ultimately be the holding of the Court upon the question, the trial court here, by its rejection of plaintiff's contention, treated § 28–0116, subd. 6, as being without application to the situation.

It would be possible for the court's view to have rested on the construction of the section referred to above. From the expression made, however, it appears rather to have been predicated on the ground that, because of the nullification effected by plaintiff's rescission, the action was and could only be, in the light of the North Dakota cases set out, one for the recovery at law of money had and received. And as to such a recovery right, there is implicit in the court's rejection of § 28–0116, subd. 6, as inapplicable, the holding that the statute of limitations in North Dakota commences to run against a cause of action for money had and received from the time that the money was received. The import of this is that the rescission engaged in by plaintiff under the statute relegated the fraud involved to a position of mere incidence so far as the action was concerned, and that the suit itself therefore did not represent "an action for relief on the ground of fraud", within the language of § 28–0116, subd. 6.

This is, of course, a narrow and unliberal view of the North Dakota statute, but it cannot be said to be a legally unpermissible one on the part of the trial court, and plaintiff has not demonstrated, by judicial decision, legislative enactment, or other indication of North Dakota law, that it is a clearly erroneous one.

As we have noted previously, the questions involved go beyond the realm of mere procedure, in that they relate to the scope and limits of plaintiff's recovery right. Thus, they are not, so far as the federal district court was concerned, mere "details related to its own conduct

of business". Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 555, 69 S.Ct. 1221, 1230, 93 L.Ed. 1528. See also Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

The procedural right of a federal district court in a diversity suit to make summary disposition of the action on the basis of a statute of limitations has previously been declared by us. Kithcart v. Metropolitan Life Ins. Co., 8 Cir., 150 F.2d 997.

Affirmed.