**TRANS WORLD AIRLINES, Inc.,**
Appellant,

v.

**The TRAVELERS INDEMNITY COMPA-NY, a corporation, Standard Accident Insurance Company, a corporation, MacDonald Construction Company, a corporation, and Foster & Creighton Company, a corporation, Appellees.**

**No. 16041.**

United States Court of Appeals
Eighth Circuit.

Jan. 5, 1959.

Dick H. Woods, Kansas City, Mo., (Harold L. Warner, Jr., Harry L. West, Chadbourne, Parke, Whiteside & Wolff, New York City, and Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., were with him on the brief), for appellant.

F. Philip Kirwan, Kansas City, Mo. (Abraham E. Margolin, William S. Hogsett, J. D. James, Margolin & Kirwan, and Hogsett, Houts, James, Randall & Hogsett, Kansas City, Mo., were with him on the brief), for appellees.

Before JOHNSEN, VOGEL and MATTHES, Circuit Judges.

VOGEL, Circuit Judge.

Some time prior to June 15, 1955, the City of Kansas City, Missouri, entered into an agreement with Trans World Airlines, Inc., (TWA) whereby the city agreed to have constructed at the Mid-Continent International Airport certain extensive base facilities. Under that agreement, the facilities were to be leased to TWA, which was obligated to pay rent on the entire facility commencing January 1, 1957, regardless of whether the improvements to be erected at the airport had been completed by that date. On June 15, 1955, the city awarded a contract for the construction of the facilities to MacDonald Construction Company and Foster & Creighton Company as principals and Travelers Indemnity Company of Hartford, Connecticut, and Standard Accident Company of Detroit, Michigan, as sureties in the amount of $8,420,569.00, which contract provided that the work should be completed within 457 calendar days after notice to begin work. Such notice was given on June 24, 1955, thereby requiring the completion of the contract by October 5, 1956. This contract included the provision that TWA " * * * shall have full and complete power to enforce and require performance of all of the Contractor's obligations under this Con-

tract, including, without limitations, the obligations contained in GC–45 Defective Materials and Work and GC–46 Equipment Guaranty and all other obligations concerning quality of work and materials, freedom from liens, application of performance bonds, etc."

Recognizing that the contractors might be delayed in completing the work, the contract provided for liquidated damages to the owner, the City of Kansas City, as follows:

"SC–12 Liquidated Damages.

"The sum which is to be paid by the Contractor to the Owner as liquidated damages for each day of default in completion of the contract as provided in paragraph GC–48 shall be Fifty ($50.00) Dollars per consecutive calendar day of default."

Also recognizing that, separate and apart from damages to the owner by reason of delay, TWA would also suffer damages, the contract provided:

"GC–48 Liquidated Damages.

\*  \*  \*  \*  \*  \*

"The rights of Trans World Airlines, Inc., to liquidated damages are completely independent of the foregoing and are governed solely and unconditionally by the provisions of the Special Conditions dealing therewith."

Such special conditions were as follows:

"SC–13 Special Liquidated Damages to Trans World Airlines, Inc.

"The Contractor and Surety acknowledge and recognize that Trans World Airlines, Inc., has agreed to pay rental for the whole of the Base Facilities beginning not later than January 1, 1957, and that Trans World Airlines, Inc., will therefor suffer special loss and damage in the event and to the extent that the whole of the Base Facilities be not substantially and usably finished on or prior to January 1, 1957. The Contractor shall schedule construction, and shall do everything possible to offset and overcome delay,

so as to assure and effect completion of this contract at the earliest date and within the four hundred fifty seven (457) calendar day period specified in SC–8; but should that prove impossible because of unavoidable delays for causes beyond the Contractor's control, including strikes, the intention hereof is that no liquidated damages shall be due hereunder until from and after January 1, 1957. The Contractor and Surety agree that the extent of such special loss and damage constituting liquidated damages and not a penalty, attributable to delay in performance of the work under this contract is as follows:

"If work under this contract is not completed by January 1, 1957, Fifteen Hundred ($1,500.00) Dollars per calendar day during which the work remains unfinished; except, and provided however, that:

"a. When the work in Area A is completed, the extent of liquidated damages attributable to delay in performance under this contract shall be reduced to Nine Hundred ($900.00) Dollars per calendar day during which the work remains unfinished; (See Paragraph 1–2)

"b. When the work in Areas A and B is completed, the extent of liquidated damages attributable to delay in performance under this contract shall be reduced to Four Hundred ($400.00) Dollars per calendar day during which the work remains unfinished. (See Paragraph 1–2)

"The Contractor and Surety agree that independent of and without reference to all other provisions of the Contract Documents and instruments of which this is a part, and in addition to Contractor's other obligations contained therein the Contractor (and, if the Contractor fails to do so, the Surety) shall pay to Trans World Airlines, Inc. the sums specified above as liquidated damages in event of delay in finishing the work as above mentioned,

regardless of the cause or reason for such delay, whether beyond the Contractor's control, force majeure, or other cause.

"Time is of the essence with respect to this provision, and no circumstance of any character including without limitation forbearance or extension of time or any other action or omission by the Owner or the Engineer, shall relieve the Contractor and the Surety of the obligations to Trans World Airlines, Inc., imposed by this SC-13, unless by written instrument expressly so stating and expressly referring to this SC-13 duly executed and delivered by the Vice President and Secretary of Trans World Airlines, Inc.

"The liquidated damages herein provided will not be withheld under the provisions of GC-48."

On September 5, 1957, TWA commenced this action against the sureties and the contractors, alleging failure to complete the work within the period provided in the contract and seeking damages therefor. The complaint consisted of three counts. Count 1 sought the recovery of special liquidated damages amounting to $319,500.00 under Paragraph SC-13 of the contract agreement. Count No. 2 was based on the performance and maintenance bond and sought, in addition to the same liquidated damages provided for in Count 1, statutory damages and attorney's fees from the surety defendants for vexatious refusal to pay. Count 3 sought the recovery of $3,480,000.00 for damages not expressly liquidated by the contract and resulting from the failure to complete the project within the contract time.

Appellees moved to dismiss Count 3 or to strike portions thereof upon the ground that TWA as a matter of law could not recover actual damages under a contract providing for special liquidated damages but could recover, if at all, only under the provision for special liquidated damages. The District Court sustained the motion to dismiss Count 3

and, finding that there was no just reason for delay, expressly directed the entry of final judgment in favor of defendants on that count. It is from such final judgment that TWA appeals to this court.

It is contended here that (1) for the period prior to January 1, 1957, TWA is entitled to recover its actual damages arising from inexcusable delay; (2) from and after January 1, 1957, TWA is entitled to recover its actual damages arising from inexcusable delay, including as part thereof its special liquidated damages under SC-13, the latter being recoverable regardless of the cause or reason for such delay, whether beyond the contractor's control, force majeure or other cause.

In a well-reasoned opinion (not published), the trial court found that the provisions for liquidated damages were "clear and unequivocal" and stated:

"It is the contention of plaintiff that it was clearly the intent of the parties at the time the contract was signed and the bond executed, because of the peculiar nature of plaintiff's business, that the contractors and the sureties should become liable for special damages which might accrue to them as a result of a delay in the execution of the contract, in addition to those provided in paragraphs 1-2-3-4 and 5 of SC-13. Apparently the plaintiff bases this contention on paragraph 5 of such provisions, which provides:

" 'The Contractor and Surety agree that independent of and without reference to all other provisions of the Contract Documents and instruments of which this is a part, and in addition to Contractor's other obligations contained therein the Contractor (and, if the Contractor fails to do so, the Surety) shall pay to Trans World Airlines, Inc., the sums specified above as liquidated damages in event of delay in finishing the work as above mentioned, regardless of the cause or reason

for such delay, whether beyond the Contractor's control, force majeure, or other cause.'

"From an analysis of the contract, it seems clear to me that 'all other provisions of the Contract Documents and instruments of which this is a part, and in addition to Contractor's other obligations contained therein' clearly mean the obligations specified in such documents, such as the payment of materialmen, the quality and type of work, the furnishing of surety bonds and all of the other duties and responsibilities incident to the construction which are clearly spelled out in the contract, and that it could not have been the intention of the contractor or surety under the terms of this contract, to obligate themselves for undetermined or unliquidated damages in addition to those specifically provided for in paragraphs 1–2–3–4 and those other provisions which have been defined immediately above.

"To sustain its position, plaintiff relies upon the case of City of Bridgeport v. United States Fidelity & G. Co., 105 Conn. 11, 134 A. 252. It seems clear to me that that case is clearly distinguishable from the question now before the court, in this respect—there the liquidated damage clause, in the contemplation of the parties, pertained to the recovery of damages due to public inconvenience by not completing the contract, and was held inapplicable to that action which was for damage incurred by the plaintiff during the pendency of the contract which had not been intended to be liquidated by the parties.

"Unquestionably the great weight of authority, it seems to me, almost unchallenged, is to the effect that where a contract and bond provides for the penalties to be paid in the event of a failure to comply with the terms of a contract, are clearly binding upon all the parties, and that special or unliquidated damages may not be collected in addition to liquidated damages which are clearly provided for and spelled out in the contract."

After citing cases to support his conclusion, the District Judge stated:

"It is my conclusion that the plaintiff has no cause of action for special damages as it attempts to set out in Count III, nor could a further cause of action be pleaded for special damages."

■■ We think it cannot be disputed that the general rule enforced by the courts of the State of Missouri and elsewhere is to the effect that where the parties especially provide or stipulate for liquidated damages, such liquidated damages take the place of any actual damages suffered and that any recovery for breach is limited to the amount so agreed upon. The rule is stated in 15 Am.Jur., § 264, Damages, p. 697, as follows:

"The effect of a clause for stipulated damages in a contract is to substitute the amount agreed upon as liquidated damages for the actual damages resulting from breach of the contract, and thereby prevent a controversy between the parties as to the amount of damages. If a provision is construed to be one for liquidated damages, the amount named forms, in general, the measure of damages in case of a breach, and the recovery must be for that amount. No other or greater damages can be awarded, even though the actual loss may be greater or less."

Missouri cases supporting the rule are Stillwell v. Temple, 1859, 28 Mo. 156; Morse v. Rathburn, 1868, 42 Mo. 594, 603, where the court said:

"Where the parties to a contract, in which the damages to be ascertained growing out of a breach are uncertain in amount, mutually agree that a certain sum shall be the damages in case of a failure to perform,

in language plainly expressive of such agreement, and when the intention is plain and palpable, there is no law, that I am aware of, to justify the courts in giving the contract a different construction or saying that the parties meant something else * * *";

and Black v. Emory, Mo.App. 1925, 275 S.W. 48. In the latter case, which was cited by the trial court, it was clearly pointed out that if the contract between the parties provided for " * * * liquidated damages, then the amount to be paid by the party in default was fixed at $200, irrespective of any damage that he might actually suffer and could prove. Morse v. Rathburn, 42 Mo. 594, 97 Am. Dec. 359."

TWA contends, of course, that the "SC–13 special liquidated damages to Trans World Airlines, Inc.," had to do only with liquidating the damages to which TWA would be entitled by reason of its having to pay rent to the City of Kansas City beginning January 1, 1957, even though the facilities contracted for were not completed and that it should be able to recover damages in addition to such liquidated damages. It relies heavily upon the case of City of Bridgeport v. United States Fidelity & G. Co., 1926, 105 Conn. 11, 134 A. 252. As pointed out by the trial court, however, that case is clearly distinguishable and lends no support for appellant's contention.

■ Appellant also argues that the trial court's determination "ignores the clear agreement of the parties that the *special* liquidated damages payable under SC–13 are '*in addition to Contractor's other obligations*'," and that it "ignores the intention of the parties" to liquidate not all damages but solely the *special* damages which TWA would suffer from and after January 1, 1957. That, of course, raises the question of whether or not an ambiguity exists in the contract between the parties. This court said, in United States v. Northern Pacific Ry. Co., 8 Cir., 1951, 188 F.2d 277, 280:

"The question as to whether an ambiguity exists in a contract is to be determined by the court as a matter of law. 17 C.J.S. Contracts § 617; Whiting Stoker Company v. Chicago Stoker Company, 7 Cir., 171 F.2d 248; Golden Gate Bridge & Highway District of California v. United States, 9 Cir., 125 F.2d 872."

And in Floyd v. Ring Construction Co., 8 Cir., 1948, 165 F.2d 125, 129:

"The law is 'that the terms of a contract, if it be ambiguous, are matters of fact to be determined in the same manner as other facts; by the jury, if it be a jury case, or by the court, if the jury be waived; while *the construction of the contract and its legal effect are questions of law for the court.*' Pike Rapids Power Co. v. Minneapolis, St. P. & S. S. M. R. Co., 8 Cir., 99 F.2d 902, 916; National Surety Corporation of New York v. Ellison, 8 Cir., 88 F.2d 399, 402; State v. Fellows, 98 Minn. 179, 187, 107 N.W. 542, 108 N.W. 825; Bell Lumber Co. v. Seaman, 136 Minn. 106, 161 N.W. 383, 384; Lucas v. Ganley Bros., 166 Minn. 7, 206 N.W. 934, 936." (Emphasis supplied.)

In construing this contract the trial court determined, and we think correctly, that no ambiguity existed. There was, accordingly, no fact question for determination. The conclusion that " * * * and in addition to Contractor's other obligations contained therein" meant obligations of the same character as set forth in the trial court's opinion is a sound one. The provision that " * * the Contractor (and, if the Contractor fails to do so, the Surety) *shall pay* to Trans World Airlines, Inc., *the sums specified above as liquidated damages in event of delay in finishing the work* * * *" (emphasis supplied) means exactly what it says. The contract provided for liquidated damages caused by delay to the owner, the City of Kansas City, and liquidated damages for delay to the lessee, TWA, to begin to run at

the time TWA had to start paying rent. If additional damages had been contemplated, obviously, the contract would have so provided. Because of such liquidated damages provision in the contract between the parties the appellant is barred from recovering actual damages, regardless of the fact that they may exceed the stipulated or liquidated damages.

Additionally, it should be noted that the construction and legal effect of this contract are determined by the law of Missouri. Unless it is demonstrated that the conclusion reached by the local federal judge is a legally unpermissible one or that by judicial decision, legislative enactment or other indication of Missouri law it is a clearly erroneous one, this court is bound to sustain. See Woodhull v. Minot Clinic, 8 Cir., 1958, 259 F.2d 676, 680.

Affirmed.